Verla R. WOODS, Individually and on behalf of all persons similarly, situated, Plaintiff,

v.

BENEFICIAL FINANCE CO. OF EUGENE, an Oregon Corporation, Defendant.

Civ. No. 74–39.

United States District Court, D. Oregon.

Feb. 14, 1975.

Stephen W. Hewitt, Lane County Legal Aid Service, Eugene, Or., for plaintiff.

Robert D. Woods, of Riddlesbarger, Young Horn & Cass, Derrick E. McGavic, of Gildea & McGavic, P. C., Eugene, Or., for defendant.

## OPINION

SKOPIL, District Judge.

Plaintiff, Verla R. Woods, seeks relief for inadequate credit disclosures made in violation of the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("The Act") and Regulation Z, 12 C.F.R. 226, promulgated thereunder.

Jurisdiction is conferred by 15 U.S.C. § 1640(e).

On January 19, 1973, plaintiff entered into a consumer credit transaction with defendant, Beneficial Finance Co. of Eugene ("Beneficial"). She was co-maker of a loan for $1,500. Interest on the loan over a three-year payment period totaled $556.32. The annual percentage rate by Beneficial's calculations was 21.79%. Insurance and other charges totaled $178.15. They were paid from the principal. As a result of this loan transaction a suit is presently pending in state court to foreclose plaintiff's security interest and for a deficiency judgment.

This dispute is presented to me on an agreed set of facts. The parties have briefed the issues of law.

The introductory provision of the Truth-in-Lending Act states its purpose clearly and concisely:

"The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

■ The Act "reflects a transition in Congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose' ". Mourning v. Family Publications Service, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). The Act is protective. It serves to slice through the tangle of hidden costs encountered by the borrower. The Act imposes the standard of "meaningful disclosure" upon lenders. The Regulations enacted to implement this standard are of necessity rather technical, but the remedial nature of the Act demands strict compliance.

Plaintiff asserts seven violations of the Act and Regulation Z promulgated thereunder by the Federal Reserve Board.

I. DEFENDANT FAILED TO INCLUDE THE COST OF CREDIT LIFE AND CREDIT DISABILITY INSURANCE WITHIN THE FINANCE CHARGE.

■ The Act requires disclosure of the finance charge and all its elements. 15 U.S.C. § 1639. Credit life, accident or health insurance premiums must be included in the finance charge unless

"(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

"(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof." 15 U.S.C. § 1605(b)(1), (2).

Beneficial excluded insurance costs from the finance charge. This enabled it to make the loan look more favorable to the borrower by lowering the finance charge and the annual percentage rate.

Beneficial's Disclosure Statement lists the insurance charge in two places (see Appendix A):

(1) The upper left-hand corner in the midst of boxed figures; and

(2) A large box on the right-hand side, which lists various costs to the borrower.

The insurance costs are not listed anywhere in the section entitled "Insurance Authorization", which is co-signed by the plaintiff. Plaintiff contends that the cost of insurance must be listed at the place where the borrower signs for such insurance. Thus Beneficial's Disclosure Statement fails to exempt the insurance charge from the finance charge.

Several Federal Reserve Board advisory letters have suggested that the premium must be listed in the insurance authorization. It may not simply refer to the amount of premium disclosed elsewhere. See FRB letter #304, CCH Consumer Credit Guide 30,350; FRB letter #271, CCH Consumer Credit Guide, 30,522.

The Court in Phillips v. Termplan of Atlanta, Inc. (N.D.Ga. Nov. 6, 1973), CCH Consumer Credit Guide, 98,841

held that the phrase "at the cost indicated above" was not a meaningful disclosure in an insurance authorization. The Court in Pollock v. Avco Financial Services (N.D.Ga. July 1, 1974), CCH Consumer Credit Guide 98,776, also held that the phrase "indicated above by a premium charge above the coverages" was not a disclosure sufficient to exempt including insurance charges in the finance charge.

The upper left-hand premium listings gave the plaintiff written disclosure of her insurance costs as required by the skeletal language of 15 U.S.C. § 1605 (b)(2). The premiums are contained in a box entitled "Nature Security (as checked) Insurance is included if amount is shown in Cost". This obfuscatory heading, combined with its separation from the borrower's authorization signature, contributed to the failure of Beneficial's Disclosure Statement to meet the conditions of Regulation 226.6(a), which require in part

"The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, . . ."

## II. DEFENDANT FAILED TO INCLUDE THE COST OF HOUSEHOLD CONTENTS INSURANCE WITHIN THE FINANCE CHARGE.

■ Plaintiff paid for insurance on "household contents" pledged as security for her loan. This cost was not included in the finance charge. The Regulations require that the finance charge must include

"Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating

that the customer may choose the person through which the insurance is to be obtained." 226.4(a)(6)

The cost of "household contents" insurance is listed in approximately the same two places as the credit disability and credit life costs. The lower left-hand side of the Disclosure Statement contains an acknowledgment of household contents insurance. A line is provided for written authorization. It is not signed, nor is the cost listed in the acknowledgment. This suggests rather cursory compliance with 15 U.S.C. § 1605. The "clear, conspicuous" standards of Regulation 226.4(a)(6) are not met regarding "household contents" insurance.

## III. DEFENDANT PROVIDED INCORRECT AND MISLEADING INFORMATION CONCERNING THE SECURITY INTEREST IT ACQUIRED IN PLAINTIFF'S PROPERTY.

■ Regulation 226.8(b)(5) requires Beneficial to describe or identify the type of security interest it acquired in connection with defendant's loan. Beneficial also must *clearly* identify the property to which it relates.

■ In the upper left-hand corner of Beneficial's Disclosure Statement a box is checked stating there is a security interest in "Furniture". The insurance purchased by defendant on this security interest purports to cover "Household Contents". In the upper right-hand corner of the Disclosure Statement it states that if the box marked "Furniture" is checked, the Security Agreement covers

"all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and now or thereafter located at the Borrowers place of residence set forth above."

The Court in Kenny v. Landis Financial Group, 349 F.Supp. 939 (N.D.Iowa 1972), held that a clear identification should provide enough information to

preclude any reasonable questions regarding the goods to which the security interest attaches. Furniture, household contents, and all consumer goods of every kind are hardly synonymous. I am unable to determine what goods are covered by the security interest. Defendant has failed to provide a clear identification of the property.

## IV. DEFENDANT INCORRECTLY STATED THAT ITS SECURITY INTEREST COVERED AFTER-ACQUIRED CONSUMER GOODS.

The portion of defendant's Disclosure Statement quoted above also claims that its security interest covers replacement goods acquired by the borrower. Defendant asserts that this language intends merely to give it a security interest in proceeds of the collateral. It further argues that interest in these after-acquired goods is not additional security and therefore escapes the prohibition of Oregon law. ORS 79.2040(4)(b), in effect at the time of the transaction, states:

"(4) No security interest attaches under an after-acquired property clause:

" * * *

"(b) To consumer goods other than accessions when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value."

However, ORS 79.3060 provides by law a continuing interest in proceeds where the replaced good is directly exchanged for another consumer good. Beneficial's "replacement" language is superfluous. It might mislead a consumer into believing Beneficial retained an interest in something purchased to replace a worn out consumer good.

In a case involving similar "replacement" language the Court in Kenny v. Landis, *supra,* held that it was additional information stated so as to mislead or confuse the borrower, in violation of Regulation 226.6(c). I agree. This is the type of calculated ambiguity that

the Act was designed to remedy. The standard of "words mean what I say they mean" is touted in *Alice in Wonderland.* Beneficial seeks to apply such a standard to its Disclosure Statement. Instead, I find defendant has failed to meet the Act's standard of "meaningful disclosure", 15 U.S.C. § 1601, and violated Regulation 226.6(c).

## V. DEFENDANT FAILED TO IDENTIFY THE METHOD OF COMPUTING THE UNEARNED PORTION OF THE FINANCE CHARGE IN THE EVENT OF PREPAYMENT OF THE OBLIGATION.

Beneficial explains in the Disclosure Statement that "the final installment shall be equal to the unpaid principal plus interest accrued at the time such final installment is paid". This explains the net effect of the so-called Rule of the 78s. This rule is used to compute the unearned, rebated portion of the finance charge in the event of prepayment of the loan.

Regulation 226.8(b)(7) provides that the Disclosure Statement must contain

"Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed."

Defendant contends its net-effect listing provides proper identification of the method used for calculating finance charge refunds.

The Ninth Circuit recently considered a similar "identification" problem in Bone v. Hibernia Bank, 493 F.2d 135 (9th Cir. 1974). Plaintiff received a

Disclosure Statement which identified the method of computing prepaid interest by the phrase "Rule of the 78's". The loan officer provided Bone with a detailed explanation of how the rule worked. Several days later Bone informed the bank that this phrase was illegal, but he would "settle the case" for three times the finance charge.

The District Court found the phrase arcane and meaningless to the laymen. It was not proper identification of the method.

The Court of Appeals first considered the broad regulatory and rulemaking powers bestowed on the Federal Reserve Board by the Act. In this capacity the FRB issued several unofficial advisory letters and a pamphlet indicating that the phrase "Rule of the 78's" was permissible identification under Regulation 226.8(b)(7). The FRB found narrative explanations or mathematical illustrations of the rule too confusing. They would detract from the borrower's understanding of a Disclosure Statement. See FRB letter #307, CCH Consumer Credit Guide 30,532. The Court deferred to the FRB's specialized experience and held that Regulation 226.8(b)(7) could be satisfied by reference to the Rule of the 78s.

■ I agree with defendant's exasperation with conflicting Regulations, illustrated guides, and court opinions in this area. I also agree that the present state of the Regulations permit compliance by listing the net effect of the method used.

■ However, I caution defendant to note that the loan officer in *Bone* fully explained the method. No conversation between plaintiff and the Beneficial loan officer is submitted in evidence by the parties here. The Court in *Bone* provides a succinct, understandable explanation of the operation of the Rule. Defendant could insure compliance with Regulation 226.8(b)(7) by providing each customer with a separate card explaining the rule or method used.

## VI. DEFENDANT FAILED TO DISCLOSE THAT AN ACCELERATION CLAUSE WAS CONTAINED IN THE PROMISSORY NOTE TAKEN AS PART OF THE TRANSACTION.

The promissory note signed by the plaintiff as part of the loan transaction contains the following provision:

"A default in the payment of the full amount of any instalment of the principal and interest thereon, at the option of the holder hereof and without notice or demand, shall render the entire unpaid balance of the principal hereof and accrued interest thereon at once due and payable."

This acceleration clause was not mentioned in Beneficial's Disclosure Statement. The Act requires that the creditor must disclose "the default, delinquency, or similar charges payable in the event of late payments". 15 U.S.C. § 1639(a)(7). Plaintiff contends that the right of acceleration constitutes a "charge" within the meaning of the Act and must be disclosed. Defendant, waxing radical chic, labels its right as an "event". The word "charge" is not defined in the Act or in the Regulations.

In Garza v. Chicago Health Clubs, Inc., 347 F.Supp. 955 (N.D.Ill.1972), the Court held that the acceleration of the balance of the debt is a charge and must be disclosed. "Charge" was treated as a synonym for an "obligation" or "claim". The acceleration clause did not provide for any partial refund of any unearned interest on the balance. Disclosure of the acceleration clause was necessary "to inform consumers of credit costs and terms so they can effectively choose between sources of credit". *Garza* at 959.

*Garza* was followed in Johnson v. Associates Finance, Inc., 369 F.Supp. 1121 (S.D.Ill.1974); Pollock v. Avco Financial Services, Inc., *supra*; Johnson v. McCrackin-Sturman Ford, Inc., 381 F. Supp. 153 (W.D.Pa.1974), CCH Consumer Credit Guide 98,805.

Pugh v. Am. Tractor Trailer Training (Conn.1974), CCH Consumer Credit Guide 98,828 (reported only in summary form), follows *Garza*, emphasizing that there is an increased cost to the borrower because the finance charge need not be reduced to correspond to the shorter credit period caused by the acceleration. Defendant here contends only accrued interest becomes due in case of acceleration. Therefore it imposes no additional "charge" under the Act.

The Court in Meyers v. Clearview Dodge Sales, Inc. and Chrysler Credit Corp., 384 F.Supp. 722 (E.D.La.1974), CCH Consumer Credit Guide 98,718, dealt directly with defendant's contention. The Court held that a right of acceleration must be disclosed even absent an increase in the consumer's total financial obligation. The Court stated:

> "The acceleration of the balance of the debt against one who is late with a payment certainly results in a considerable immediate pecuniary burden for one attempting to avoid foreclosure. The Truth-in-Lending Act was intended to require disclosure of exactly this type of credit information." *Meyers* at 727.

I agree with *Meyers* that a right of acceleration is the type of credit information that should be disclosed under the spirit of the Act. I do not agree that Beneficial must make the fine semantical distinctions required to equate acceleration with "charge" when no additional total financial cost is imposed. The right of acceleration is a typical clause in consumer credit transactions. Yet the mere right of acceleration of the principal is not specifically mentioned in the Act. Nor has the FRB promulgated any regulations to guide the creditor, despite continuing litigation in this area.

■ Beneficial need not disclose a right of acceleration as an additional "charge". However, such a right is an obvious concern to a borrower. The Act requires "meaningful disclosure". Henceforth a creditor must disclose and fully explain any right of acceleration in order to comply with the "meaningful disclosure" standard of the Act.

## VII. DEFENDANT FAILED TO DISCLOSE EACH AMOUNT INCLUDED IN THE FINANCE CHARGE.

■ Regulation 226.8(d)(3) requires the creditor to include a description of each amount included in the finance charge. If the finance charge consists only of interest, it must be described as such. Johnson v. Associates Finance, Inc., *supra*.

■ Beneficial's Disclosure Statement has an asterisk next to the finance charge. Another asterisk below keys the statement, "Interest computed on outstanding unpaid principal balance as if loan paid according to contract."

The finance charge complies with the Regulations.

Beneficial's credit life and credit disability listings violate Regulation 226.6 (a). The "household contents" insurance listing violates Regulation 226.4(a)(6). The type of security interest acquired by Beneficial is not clearly identified in violation of Regulation 226.8(b)(5). In stating that it acquired a security interest in replacement goods, Beneficial violated Regulation 226.6(c).

Beneficial did properly identify its method of computing the unearned portion of the finance charge in the event of prepayment of the obligation. I suggest, however, that Beneficial should supply the borrower with an explanation of the "Rule of the 78's". The acceleration clause presented here is not a "charge", but it should be disclosed in the future if Beneficial is to meet the Act's standard of meaningful disclosure. Finally, each amount in the finance charge is properly disclosed.

■ Any violation of the Act renders the creditor liable to the borrower

for a penalty of twice the amount of the finance charge, but in no event less than $100 or more than $1,000. The finance charge here was $556.12. I award plaintiff $1,000.

Plaintiff will submit evidence by affidavit of reasonable attorney's fees.

This Opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## APPENDIX "A"

### STATEMENT OF DISCLOSURE (Borrower's Copy)

**LENDER**

"Exhibit A"

BENEFICIAL FINANCE CO.
OF EUGENE
814 CHARNELTON
EUGENE, OREGON 97401 TEL
3 848 16

The Lender's name and address above are expressly made a part of the Statement of Disclosure.

The Actual Amount of Loan shown hereon, together with interest on unpaid principal balances, is payable in successive monthly instalments and the Number and Amount of said instalments are set forth below. The first of said instalments is payable on the First Due Date shown in the box to the right hereof and each subsequent instalment on the same day of each succeeding month thereafter, the final instalment being due and payable on the Final Due Date shown in the box to the right hereof. If the loan is paid according to contract, the final instalment shall be in the Amount set forth in said box, otherwise the final instalment shall be equal to the unpaid principal plus interest accrued at the time said final instalment is paid. The sum of the monthly instalments is shown below as the TOTAL OF PAYMENTS.

SECURITY: The security for this loan is checked hereon in the box headed "Nature Security". If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned or thereafter acquired by the Borrowers in replacement thereof and now or thereafter located at the Borrowers place of residence set forth above. Such Security Agreement secures future advances or loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

| INSTALMENTS | | Borrowers | | |
|---|---|---|---|---|
| First Due Date 2/19/73 | | Last Name WOODS 106 | Loan No. 22742-1 | |
| Amount .57.12 | Number 36 | First Name Leonard (33) | Spouse Verla R. (32 | |
| Date 1/19/76 | | Address No.& St. 2520 Jackson St. | 6mo. | |
| Date 1/19/73 | | City & State Eugene, Oregon | Filing Fees 3.00 | Zip 97405 |
| NATURE SECURITY (as Checked) INSURANCE (included if amounts shown in cost) | | Security Agreement dated | Actual Amount of Loan 1500.00 | |
| Life 37.01 | | on Furniture | | |
| Disability 78.14 | | on Auto '68 Chev. S/W | Make | |
| Household Contents 60.00 | | Accommod Maker | | |
| Auto | | | | |

The box above and the information set forth therein expressly are made a part of this Statement of Disclosure.

**Insurance Authorization and Request and Acknowledgment of Receipt of Loan Proceeds and Statement of Disclosure**

The undersigned hereby authorize and request the above identified Lender to arrange for the insurance described below and agree to pay from the proceeds of said loan the identifiable cost thereof as set forth above.

*Reducing term group credit life insurance insuring the life of the designated Principal Borrower during the term of said loan for the unpaid principal balance plus interest accrued to the date of death.*

*Group credit disability insurance, insuring said Principal Borrower against disability during the term of said loan, the benefit of which after 14 days of disability shall be retroactive to the first day of disability and shall be equal for each day of disability to 1/30th of the monthly instalment on said Certificate.*

The actual terms of any such insurance shall be those set forth in the certificate issued in connection therewith.

The undersigned expressly state and agree that this authorization is made voluntarily, not upon any requirement of the Lender or any of the Lender's employees, and acknowledge that the taking of such insurance is entirely optional.

☑ I desire Credit Life Insurance } Date Jan 19, 1973
☐ I do not want Credit Life Insurance } X Leonard C Woods
(SIGNATURE)

☑ I desire Credit Disability Insurance } Date Jan 19, 1973
☐ I do not want Credit Disability Ins. } X Verla R Woods
(SIGNATURE)

The undersigned further acknowledge receipt from the Lender of a written statement setting forth the premium for insurance written against loss of or damage to property if obtained through the Lender, which insurance is more specifically identified as follows (check box for applicable insurance coverage):
☑ *Household Contents Insurance—Fire and Extended Coverage*
☐ *Automobile Physical Damage Insurance—Collision and Comprehensive Coverage*

The undersigned further acknowledge that with reference to such above identified insurance coverage so selected, the Lender disclosed the above stated premium for such insurance coverage and, that the undersigned had a choice of the person through which to obtain such insurance coverage.

The undersigned also acknowledge receipt of a Statement of Disclosure as prescribed by the aforesaid Consumer Credit Protection Act and Regulation Z and further agree that the proceeds of loan were received on the date shown below and were disbursed, in accordance with the undersigned's authorization, for the items shown in the box to the right hereof, receipt of the item designated "Cash or Check Delivered to Borrowers" hereby being acknowledged.

Witness Edward J. Cliff Date 1/19, 1973

Principal Borrower

Co-Borrower

---

### DISCLOSURE OF INFORMATION
as prescribed by
The Federal Consumer Credit Protection Act
And Regulation Z issued thereunder.

At the direction and request of the Borrowers, on their behalf and for their benefit, the Lender has disbursed the proceeds of the loan identified to the left above as follows:

Payment to Lender on Prior Loan No. _____
Unpaid Balance ............. $_____
Less Refunds of { Life Ins. Cost .. $_____
Disability Ins. Cost .. $_____ }
Unpaid Principal Amount of Prior Loan $_____
Group Credit Life Insurance Cost . $ 37.01
Group Credit Disability Ins. Cost . $ 78.14
Household Cont. Ins.—Fire & Extended Coverage Amt. $2000 Term 2 yrs. Prem. $ 60.00
Automobile Physical Damage Insurance
☐ $25 deductible comprehensive—towing and labor
☐ $50 deductible collision
Amt. $_____ Term _____ yrs. Prem. $_____
Motor Vehicle Title Transfer Fees . $ 1.50
Filing Fees—UCC Filing Forms ... $ 1.50
To P/C City to release .... $ 321.38
To ............ $_____
To ........ $_____
To ............ $_____ 699.53 (W)
To ............ $_____ 178.15
Total Disbursements .... ........ 321.38 800.47
Cash or Check Delivered to Borrowers → 1500.00
AMOUNT FINANCED— ual Amount of Loan .. $ 556.32
Finance Charge* 21.79 $_____
Annual Percentage Rate _____ % 2056.32
TOTAL OF PAYMENTS .. .. .. $_____

*Interest computed on outstanding unpaid principal balances as if loan paid according to contract.
For the Lender named to the left above.

By _____ Manager

---

**STATEMENT RE INSURANCE AGAINST PROPERTY LOSS** (Applicable only if Insurance taken — Check box which applies)

☐ *Household Contents Insurance—Fire and Extended Coverage* ................. Premium If Obtained Through Lender ................. $_____
☐ *Automobile Physical Damage Insurance- Collision and Comprehensive Coverage* .... Premium If Obtained Through Lender ................. $_____

The Lender hereby advises the Borrowers that the above described insurance coverage may be obtained through a person of their choice and the Borrowers are under no obligation to obtain such insurance through the Lender.