Deborah A. WILLIAMS

v.

BILL WATSON FORD, INC. and Ford Motor Credit Co.

Civ. A. No. 74–3379.

United States District Court, E. D. Louisiana.

Sept. 27, 1976.

Supplemental Opinion Nov. 19, 1976.

Keith A. Rodriguez, Robert M. Hearin, Jr., New Orleans, La., for plaintiff.

Peter A. Feringa, Jr., New Orleans, La., for Ford Motor Credit Co.

James C. Murphy, Jr., New Orleans, La., for Bill Watson Ford, Inc.

## OPINION

SEAR, District Judge:

This is a suit under the Truth in Lending Act for damages and attorney's fees.

On August 27, 1974, defendant Bill Watson Ford prepared a Louisiana Automobile Retail Installment Contract and a note and chattel mortgage in connection with the sale of a used 1974 Mercury Montego to the

plaintiff. The Contract served as the disclosure statement required by the Truth in Lending Act and had been furnished in blank to Watson by defendant Ford Motor Credit Company. The note and mortgage were subsequently assigned to Ford Motor Credit in accordance with prior arrangements between Watson and Ford Motor Credit.

Plaintiff claims that the disclosure statement violated the Truth in Lending Act and Regulation Z and was defective in the following particulars:

(1) A charge of $3.50 for "Official fees" which was separately itemized on the disclosure statement, was in fact a notary's fee and should have been contained in the finance charge as a cost of credit.

(2) The charge for "Official fees" and a charge of $15.00 for "License, title and registration fees" exceeded the amounts actually paid by Watson for these services and therefore contained hidden finance charges which should have been revealed to plaintiff.

(3) An acceleration clause set out on the reverse side of the disclosure statement constituted a default charge and, as such, should have been revealed either on the front of the disclosure statement above or adjacent to the plaintiff's signature, or on a separate statement identifying the transaction.

Each issue may be separately considered:

## NOTARY'S FEE

The purpose of the Truth in Lending Act is to promote the informed use of credit by consumers by enforcing a meaningful disclosure of credit terms. 15 U.S.C. § 1601. Among the required disclosures, a creditor must reveal the amount of the finance charge and the finance charge expressed as an annual percentage rate. 15 U.S.C. § 1638(a)(6), (7). The regulations adopted by the Federal Reserve Board pursuant to the Truth in Lending Act, popularly known as Regulation Z, specify the method by which the finance charge is determined with the following qualification:

"If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:

(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction."

12 C.F.R. § 226.4(b)(1).

The disclosure statement furnished to the plaintiff listed a $3.50 charge for "Official fees". This fee was assessed for the notarization of four separate items in connection with the sale. Plaintiff argues that any charge incident to the extension of credit must be included in the finance charge unless it is specifically excludable from the finance charge by statute or regulation, and that § 226.4(b)(1) does not provide such an exemption in this case since a notary's fee is not a charge imposed by law for the perfection of a security interest.

We disagree. Louisiana law does indeed require authentication of certain documents in order to perfect a security interest in the context of the credit sale of an automobile. *See, e. g.,* La.R.S. 9:5353. Furthermore, we agree with Judge Rubin's reasoning in *George v. General Finance Corp. of Louisiana,* E.D.La.1976, 414 F.Supp. 33, 35 that:

"While a notary public is not an elected public official, . . . the office is a public one. It was necessary to have the mortgage notarized and recorded to perfect the security retained by the creditor."

Therefore, we hold that a notary's fee falls within the exception delineated by § 226.-4(b)(1) and need not be included in the finance charge if it is separately itemized on the disclosure statement.

## HIDDEN FINANCE CHARGES

The general manager of defendant Bill Watson Ford testified at trial that it was the defendant's practice to assess a flat notary's fee of $3.50 on every used car sale. This amount was deposited by the general manager into his "notary's account" from

which the defendant retained the services of a notary at a salary of $250 a month. The $3.50 was never paid directly to the notary, nor did his compensation fluctuate in relation to the number of documents he notarized each month. It is therefore entirely possible that the notary never received this particular fee or that he received only a part of it. Plaintiff argues that to the extent the $3.50 exceeded the amount actually paid to the notary, it contained a hidden finance charge which accrued to the secret profit of Watson.

We agree. In light of Watson's financial arrangements with its notary, the mere listing of the $3.50 charge as a notary's fee was inadequate. A disclosure of the precise amount paid to the notary was required, with the excess to be included in the finance charge. Therefore, the disclosure statement violated 15 U.S.C. § 1638(a)(6), (7) and 12 C.F.R. § 226.8(c)(8). *Cf. Starks v. Orleans Motors, Inc.,* E.D.La.1974, 372 F.Supp. 928, 932, *aff'd* 5 Cir., 500 F.2d 1182; *Meyers v. Clearview Dodge Sales, Inc.,* E.D. La.1974, 384 F.Supp. 722, 725.

By the same reasoning, the charge of $15.00 for "License, title and registration fees" listed on the disclosure statement was also in violation of the Act and Regulation Z insofar as it contained a hidden finance charge. It was shown at trial that Watson charged a standard fee of $15.00 for license, title and registration charges. However, the exact amount required by Louisiana law was $10.50, composed of $3.50 for the title, $6.00 for the license, and $1.00 for recordation. La.R.S. 32:733; La.R.S. 47:463. Again, the disclosure statement violated 15 U.S.C. § 1638(a)(6), (7) and 12 C.F.R. § 226.-8(c)(8). *Starks v. Orleans Motors, Inc.,* E.D. La.1974, 372 F.Supp. 928, 932, *aff'd* 5 Cir., 500 F.2d 1182; *Meyers v. Clearview Dodge Sales, Inc.,* E.D.La.1974, 384 F.Supp. 722, 725.

## ACCELERATION CLAUSE

■ On the reverse side of the disclosure statement furnished to the plaintiff, provision was made for acceleration of the debt upon default:

"Buyer does hereby declare that in the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any of the terms and conditions hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or Seller deems the Property in danger of misuse or confiscation, or Seller otherwise reasonably deems the indebtedness or the Property insecure, Seller shall have the right, at its election, to declare the unpaid portion of the Total of Payments and said promissory note, together with any other amount for which Buyer shall have become obligated hereunder, to be immediately due and payable."

Plaintiff contends that the acceleration clause should have been disclosed on the face of the statement in accord with 15 U.S.C. § 1638(a)(9) which requires disclosure of "default, delinquency, or similar charges payable in the event of late payments," and in accord with 12 C.F.R. § 226.8(b)(4) requiring the disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." Defendants argue that a right of acceleration is not a "charge" within the meaning of either of these provisions, since acceleration does not impose upon the consumer any cost above the amount already due under the contract, particularly when Louisiana law requires that unearned interest at the time of acceleration be rebated to the consumer. La.R.S. 9:3528. If acceleration is not a "charge", neither the Act nor Regulation Z require its disclosure.

The issue presented is a complex one and has been the subject of many conflicting decisions since the Truth in Lending Act was enacted. The first case to consider the question, *Garza v. Chicago Health Clubs, Inc.,* N.D.Ill.E.D.1972, 347 F.Supp. 955, concluded that acceleration clauses are charges which must be disclosed. The Court referred to the meaning of the word "charges" as defined by Black's Law Dictionary 294 (4th Ed. 1951): a synonym for "obligation" or "claim".

"Considering these definitions and the purpose of the statute and regulation to inform consumers of credit costs and terms so they can effectively choose between sources of credit (TIL § 102, 15 U.S.C. § 1601), it seems clear that the acceleration of the balance of the debt should be considered a 'charge' . . ."

347 F.Supp. at 959. This aspect of the *Garza* decision has been challenged on the ground that it took the word "charges" out of context, ignoring the import of the entire phrase "default, delinquency, or similar charges".

"In considering the word 'charges' apart from the language that modifies it, the . . . court not only used a method of analysis which is inconsistent with well established principles of statutory interpretation but also derived a definition of that term which does not comport with the purpose of section [1638(a)(9)]."

*Johnson v. McCrackin-Sturman Ford, Inc.*, 3 Cir. 1975, 527 F.2d 257, 265. The *Johnson* court went on to propose that the phrase "default, delinquency, or similar charges" should be given its generally accepted meaning in the consumer credit industry, i. e., specific monetary sums which are imposed because of late payment over and above amounts already due under the loan. The court pointed out that if upon acceleration unearned interest is rebated, no additional charge is imposed; the only modification of the terms of the agreement is a shortening of the time for repayment of the principal. *Johnson* concluded that acceleration clauses are not "charges" at least when unearned interest is rebated, and need not be disclosed.

It is tempting to distinguish the *Garza* case on the basis that it did not consider the effect of a rebate of unearned interest in equating acceleration clauses with charges. The issue is not so neatly disposed of, however. *Meyers v. Clearview Dodge Sales, Inc.*, E.D.La.1974, 384 F.Supp. 722 found that an acceleration clause is a charge regardless of whether unearned interest is rebated defining a "charge" as:

" . . . any pecuniary burden, expense or obligation. The acceleration of the balance of the debt against one who is late with a payment certainly results in a considerable immediate pecuniary burden for one attempting to avoid foreclosure. The Truth-In-Lending Act was intended to require the disclosure of exactly this type of credit information."

*Id.* at 727.

Yet another tangent was developed by the court in *Woods v. Beneficial Finance Co. of Eugene*, D.Or.1975, 395 F.Supp. 9. The court dismissed the "charge" controversy as a "fine semantical distinction" without merit. *Id.* at 16. Instead, the court held that acceleration clauses must be disclosed pursuant to the general purpose section of the Act, 15 U.S.C. § 1601 (in part):

"It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . "

Because of its reliance on a very general section of the Act, rather than a specific directive, the Court applied its decision only prospectively.

The decisions discussed are illustrative of the conflicts between circuit and district courts, and even between courts within the same circuit or district, which have arisen over this issue. Some take the position that acceleration clauses must always be revealed. *LaGrone v. Johnson*, 9 Cir. 1976, 534 F.2d 1360; *Burley v. Bastrop Loan Co., Inc.*, W.D.La.1976, 407 F.Supp. 773; *Kessler v. Associates Financial Services Co. of Hawaii, Inc.*, D.Haw.1975, 405 F.Supp. 122 (prospective only); *Woods v. Beneficial Finance Co. of Eugene*, D.Or.1975, 395 F.Supp. 9 (prospective only); *Pollock v. Avco Financial Services*, N.D.Ga.1974, CCH Consumer Credit Guide ¶ 98,766; *Hall v. Sheraton Galleries of Atlanta & General Electric Corporation of Georgia*, N.D.Ga. 1974, CCH Consumer Credit Guide ¶ 98,737; *Meyers v. Clearview Dodge Sales, Inc.*, E.D. La.1974, 384 F.Supp. 722; *Garza v. Chicago Health Clubs, Inc.*, N.D.Ill.E.D.1972, 347

F.Supp. 955. Others turn on whether unearned interest is rebated. Within this category some cases have looked only to the explicit provisions of the contract to find a rebate clause, while others have held that a rebate clause may be implied in the contract if state law requires a rebate of unearned interest upon acceleration. *Johnson v. McCrackin-Sturman Ford, Inc.,* 3 Cir. 1975, 527 F.2d 257 (state law); *Houston v. Atlanta Federal Savings & Loan Association,* N.D.Ga.1976, 414 F.Supp. 851 (contract); *Thompson v. Twin City Finance Corp.,* W.D.La.1976, 409 F.Supp. 924 (contract); *Cosby v. Mellon Bank,* W.D.Pa.1976, 407 F.Supp. 233 (state law); *Frank v. Reserve, etc., Discount Co.,* W.D.Pa.1975, 398 F.Supp. 703 (state law); *Jones v. East Hills Ford Sales, Inc.,* W.D.Pa.1975, 398 F.Supp. 402 (state law); *Barrett v. Vernie Jones Ford, Inc.,* N.D.Ga.1975, 395 F.Supp. 904 (contract); *Barksdale v. Peoples Financial Corp. of Alpharetta,* N.D.Ga.1975, 393 F.Supp. 112 (state law); *Gresham v. Household Finance Corp.,* Civil Action No. 74–2189 (N.D.Ga. Nov. 13, 1975) (contract); *McDaniel v. Fulton National Bank of Atlanta,* N.D.Ga.1974, 395 F.Supp. 422 (contract); *Pugh v. American Tractor Trailer Training, Inc.,* D.Conn.1974, CCH Consumer Credit Guide ¶ 98,927 (contract); *Hamlet v. Beneficial Finance Co.,* N.D.Ga.1974, CCH Consumer Credit Guide ¶ 98,646 (law). Still other cases have held, for one reason or another, that acceleration clauses are exempt from disclosure in all cases, whether or not unearned interest is rebated. *St. Germain v. Bank of Hawaii,* D.Haw.1976, 413 F.Supp. 587; *Wiggs v. BMA Investment Co.,* N.D.Ga.1974, CCH Consumer Credit Guide ¶ 98,676; *Washington Motor Sales v. Ferreira,* 1974, 131 N.J.Super. 328, 329 A.2d 599.

In this case, the acceleration clause is unclear on the question of unearned interest. Louisiana law on the subject is contained in Part III of the Louisiana Consumer Credit Law entitled "Prepayment of Consumer Credit Transactions" and consisting of the following three provisions:

"§ 3527. *Right to prepay.*

Notwithstanding any contrary provision of a consumer credit transaction, the consumer may prepay in full the unpaid balance at any time."

"§ 3528. *Rebate upon prepayment.*

Upon prepayment in full of a precomputed consumer credit transaction, the extender of credit shall refund unearned loan finance charges or credit service charges and such refund shall represent at least as great a proportion of the loan finance charge or credit service charge after first deducting from such charge a prepayment charge of not more than twenty-five dollars, as the sum of the monthly time balances beginning one month after the month in which prepayment is made, bears to the sum of all the monthly time balances under the schedule of payments in the contract; this method of rebate upon prepayment is commonly referred to as the 'Rule of 78' or the 'Sum of the Digits' rebate method. If more than one-half of the term of the installment contract has elapsed, the rebate shall be computed without deducting a prepayment charge. No rebate less than one dollar is required."

"§ 3529. *Rebate after acceleration of maturity.*

Except as provided in R.S. 9:3525, if the maturity is accelerated for any reason and suit is filed, the obligation shall be credited with the same rebate as if prepayment in full had been made on the date of filing of suit, thereafter the obligation sued upon shall be deemed to bear a loan finance charge or credit service charge on the amount due not to exceed the rate previously charged on the obligation."

In dealing with a similar problem, the court in *Burley v. Bastrop Loan Co., Inc.,* W.D.La. 1976, 407 F.Supp. 773, concluded:

". . . Louisiana law obligates the accelerating creditor to rebate the unearned interest on an obligation, [but] this rebate is conditioned upon his filing suit to collect the obligation; the creditor

has the *power* but not the *right* to collect interest as yet unearned on the obligation."

*Id.* at 780–81. We believe that the *Burley* court misinterpreted Louisiana law when it held that an acceleration would not entitle the consumer to a rebate of unearned interest unless suit was filed. That interpretation may have resulted from an overly zealous scrutiny of La.R.S. 9:3529. In isolation, that provision supports the *Burley* reading. We feel, however, that consideration of the preceding provisions and the context in which they appear leads to a different conclusion. By denominating this portion of the Louisiana Consumer Credit Law "Prepayment of Consumer Credit Transactions" and including within it a provision explicitly regulating acceleration, it is clear that the Louisiana legislature considered acceleration to be a form of prepayment. Once this basic premise is established, it also follows that La.R.S. 9:3528 requiring rebate of unearned interest upon prepayment applies not only to voluntary prepayment on the part of the consumer, but also to prepayment elicited by the creditor through enforcement of an acceleration clause. La. R.S. 9:3529 provides for the computation of interest in the event a creditor has had to resort to the filing of a lawsuit to collect on the obligation. It designates a fictional date of prepayment for purposes of determining the rebate, and affords the creditor an added measure of interest from that date forward. In so doing, La.R.S. 9:3529 in no way abrogates the consumer's right to a rebate of unearned interest under La.R.S. 9:3528 if upon acceleration he voluntarily pays off the debt.

We are persuaded by the principle that the laws of the state in which a contract is executed become a part of the contract, and so find that since Louisiana law requires that unearned interest be rebated upon acceleration, the acceleration clause in this contract imposes no additional expense upon the consumer and is therefore not a "charge" which must be revealed pursuant to 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.8(b)(4). *Johnson v. McCrackin-Sturman Ford, Inc.,* 3 Cir. 1975, 527 F.2d 257. Moreover, we reject the use of the general purpose section of the Truth in Lending Act as an alternative basis for requiring disclosure of acceleration clauses. 15 U.S.C. § 1601. We fully agree that:

> "The right to accelerate the unpaid balance upon default by the borrower is not a useless right to the lender nor is it of little practical consequence to the borrower. Rather, the right to such acceleration is of such importance that its existence or non-existence would certainly influence the borrower's selection of a loan arrangement."

*Kessler v. Associates Financial Services Company of Hawaii, Inc.,* D.Haw.1975, 405 F.Supp. 122, 124. However, we decline to manufacture a specific disclosure requirement in the absence of such a provision in the Act.

> "The specific provisions of the Act and Regulations regarding disclosure requirements should be complied with precisely by creditors to provide the correct credit information and uniformity in terminology which Congress mandated. But the stringent disclosure requirements of [15 U.S.C. § 1639] should not be enlarged beyond the specific terms of the Act and Federal Reserve Board regulations simply to conform to some judicial notion as to the congressional purpose and intent which may be revealed in [15 U.S.C. § 1601]. The test is not what a court may consider more beneficial, informative, and understandable to the borrower than the specific requirements of the Act and Regulations. That is the province of the legislative branch. The test to be applied in determining whether a violation exists is whether there has been compliance with the specific requirements of the Act and the Regulations of the Federal Reserve Board promulgated under broad powers in the light of commercial realities."

*McDaniel v. Fulton National Bank of Atlanta,* N.D.Ga.1974, 4 CCH Consumer Credit Guide ¶ 98,683 at 88,259 (report of special master) reversed on the ground that Georgia law permits acceleration of unearned interest in some instances, 395 F.Supp. 422.

Before leaving this issue, one further point raised by *Burley v. Bastrop Loan Co., Inc.,* W.D.La.1976, 407 F.Supp. 773, deserves discussion. The Court in that case noted that under Louisiana law, a rebate of unearned interest upon acceleration is calculated under the Rule of 78's. It then argued:

"One Court has held that such a rebate does impose an additional charge upon a loan customer. *Scott v. Liberty Finance Co.,* 380 F.Supp. 475 (D.Neb., 1974). A comparison of rebates calculated by the Court and the Rule of 78's established that there was a sizeable error as to the latter method, resulting in additional cost being borne by the debtor.

"A more detailed analysis of the Rule of 78's rebate scheme made by an actuary may be found in a recent law review article. J. Hunt, 'The Rule of 78, Hidden Penalty in Prepayment in Consumer Credit Transactions,' 55 Boston U.L.Rev. 331 (1975). The actuary first calculated a rebate according to the Rule of 78's and then by the actuarial or U. S. Rule, first laid down in *Story v. Livingston,* 13 Pet. 359, 370, 10 L.Ed. 200 (1839) and, with modifications, approved for use in credit transactions by 15 U.S.C. § 1606. The actuary demonstrated that the rebate given by the Rule of 78's was much smaller than that given by the actuarial method. This also was the finding of the Court in *Bone v. Hibernia Bank,* 493 F.2d 135, 137, 140 (9th Cir. 1974). A Louisiana debtor would be compelled to pay an additional charge equal to the rebated unearned finance charge."

407 F.Supp. at 781. The Federal Reserve Board, on the other hand, in its official interpretations of the Act included as part of Regulation Z has stated in the context of prepayment:

"[A]lthough in a precomputed obligation the finance charge rebate to a customer may be less when calculated according to the 'Rule of 78's,' 'sum of the digits,' or other method than if calculated by the actuarial method, such difference does not constitute a penalty charge for pre-

payment that must be described . . .."

12 C.F.R. § 226.818. It is certainly reasonable to assume that if the Board does not consider that the use of the Rule of 78's entails a penalty charge when a consumer prepays an obligation, the Board would take the same position as to the use of the Rule when payment is accelerated.

■ We decline to come to grips with this complex question because we find that the defendants were justified in relying in good faith on the Board's statement in 12 C.F.R. § 226.818, whether or not the Rule of 78's in fact penalizes the consumer. Such a defense is authorized by the Act at 15 U.S.C. § 1640(f):

"No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason."

In sum, we conclude that the failure to disclose the acceleration clause on the face of the disclosure statement, or on a separate statement identifying the transaction was not in this case a violation of the Truth in Lending Act.

## WHO IS LIABLE?

We have found that the only violations of the Truth in Lending Act were the excessive charges for the notary's fee and for license, title and registration fees. There is no dispute that defendant Bill Watson Ford was the one who supplied these excessive figures in its completion of the disclosure statement. However, Watson argues that Ford Motor Credit should also be liable for these violations under the "conduit theory". According to that theory, a party who is technically a subsequent assignee of a credit obligation may be deemed to be a "creditor" within the meaning of the Truth in Lending Act if that party in essence ar-

ranges for the extension of credit, using the original creditor as a mere conduit. As a "creditor", the assignee is equally liable for violations of the Act. *See Garza v. Chicago Health Clubs, Inc.,* N.D.Ill.E.D.1972, 347 F.Supp. 955; *Meyers v. Clearview Dodge Sales, Inc.,* E.D.La.1974, 384 F.Supp. 722. The courts first fashioned the conduit theory in order to fill an apparent gap in the provisions of the Truth in Lending Act. Since that time, Congress has closed that gap by the enactment of a new provision, 15 U.S.C. § 1614 dealing with the liability of assignees:

> "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary."

While § 1614 does not invalidate the conduit theory, it precludes the necessity of resort to that theory in most cases. *Johnson v. Johnson,* M.D.Ga.1975, CCH Consumer Credit Guide ¶ 98,566. It is clear that under the terms of § 1614, Ford Motor Credit would not be liable, since the violations in this case are not apparent on the face of the instrument. We are convinced from the testimony given at trial that Ford Motor Credit was not in fact aware that Watson habitually overcharged its customers for these particular items. In fact, when Ford Motor Credit did finally learn of this practice, it notified Watson that it would no longer deal with them unless they thenceforth collected only the precise amount due for these items and reported the same on all future disclosure statements. Even under the conduit theory, we have found no case which would hold a finance company liable for violations committed by a seller of which it proved it had no knowledge. We must conclude that only defendant Bill Watson Ford is liable for the Truth in Lending violations in this case.

Therefore, IT IS ORDERED, that judgment be entered in favor of the plaintiff Deborah A. Williams, and against the defendant Bill Watson Ford.

## SUPPLEMENTAL OPINION

Plaintiff and defendant Bill Watson Ford, Inc., both seek to have us re-examine our finding of exclusive liability on the part of Watson in light of the Fifth Circuit's opinion in *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511 (5 Cir. 1976). Before confronting that issue, however, it is necessary that we correct an error in our earlier opinion as to the provisions of Louisiana law applicable to this case.

## CREDIT SALES OF AUTOMOBILES

Considering whether Louisiana law requires a rebate of unearned interest upon acceleration of a debt, we focused on *Burley v. Bastrop Loan Co.,* W.D.La.1976, 407 F.Supp. 773, the only case containing a thorough discussion of this issue as it relates to the Truth in Lending Act. However, the credit transaction in *Burley* did not involve the sale of an automobile as in this case. *Burley* referred to certain provisions of the Louisiana Consumer Credit Law enacted in 1972, effective January 1, 1973. As originally proposed, the Louisiana Consumer Credit Law was to regulate all consumer credit transactions, including those involving the sale of motor vehicles. *See* House Bill No. 699 of the 1972 Legislative Session. However, the bill was amended prior to its effective date to exempt transactions made pursuant to the Motor Vehicle Sales Finance Act. La.R.S. 9:3512(4).

Since this case involves the sale of an automobile, the applicable Louisiana law at the time of the transaction was La.R.S. 6:968 (since repealed). This provision was put into force by the same act containing La.R.S. 9:3529, the provision discussed in the *Burley* case and our first opinion. Act 454 of 1972. We presume that the Louisiana legislature drafted La.R.S. 6:968 to fill the gap left by the exclusion of transactions involving motor vehicles from the Louisiana

Consumer Credit Law. In any case, La.R.S. 6:968 and La.R.S. 9:3529 are essentially identical and are set out below with non-conforming portions italicized:

"*La.R.S. 6:968 (since repealed)*: If the maturity *on any Retail Installment Transaction* is accelerated for any reason and suit is filed, the obligation shall be credited with the same rebate as if pre-payment in full had been made on the date of filing of suit, thereafter the obligation sued upon shall be deemed to bear a finance charge on the amount due not to exceed the rate previously charged on the obligation.

"*La.R.S. 9:3529: Except as provided in R.S. 9:3525*, if the maturity is accelerated for any reason and suit is filed, the obligation shall be credited with the same rebate as if prepayment in full had been made on the date of filing of suit, thereafter the obligation sued upon shall be deemed to bear a *loan* finance charge *or credit service charge* on the amount due not to exceed the rate previously charged on the obligation."

In both statutes, the method of rebate or refund referred to is the Rule of 78's.

Therefore, for the same reasons set forth in our first opinion relative to La.R.S. 9:3529, we hold that La.R.S. 6:968, the applicable Louisiana law at the time of the transaction in this case, requires that unearned interest be rebated upon acceleration, and that the acceleration clause in this contract imposes no additional expense upon the consumer and is not a "charge" which must be revealed pursuant to 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.-8(b)(4).

Moreover, we note that this result accords with the position of the Fifth Circuit as revealed in *Martin v. Commercial Securities, Inc.*, 539 F.2d 521 (5 Cir. 1976), which, like the *Meyers* case, was issued on the same day as our original opinion.

### EFFECT OF MEYERS v. CLEARVIEW DODGE SALES, INC.

Both plaintiff and defendant Bill Watson Ford have urged that we overturn our previous determination that Ford Motor Credit Company is not liable on the facts of this case. They refer us to the recently rendered decision in *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5 Cir. 1976), in which the Fifth Circuit found both an automobile dealer and a finance company liable in similar circumstances. While we recognize the substantial similarities between the instant case and *Meyers*, we find that the *Meyers* case is not controlling of the allocation of liability here because of the provisions of 12 C.F.R. § 226.6(d), a section of Regulation Z which was not considered by *Meyers* in this context.

In our first opinion we declined to determine the status of Ford Motor Credit, holding that whether Ford Motor Credit was a mere assignee under 15 U.S.C. § 1614 or a creditor under the conduit theory, Ford Motor Credit would not be liable under the facts as we found them. In view of *Meyers*, there is no longer any doubt that Ford Motor Credit was indeed a creditor. The following excerpt from *Meyers* if a simple substitution of names is made seems tailor-made for the present case:

"It is undisputed that Clearview [Watson] is in the business of selling automobiles and does not ordinarily finance credit sales itself. Instead, when the purchaser has not made financing arrangements of his own, Clearview [Watson] takes a financial statement and submits it to several institutional creditors with whom it regularly deals for approval of the purchaser's credit. If any one of the lenders approves the customer's credit, Clearview [Watson] completes the sale and immediately assigns the commercial papers to an approving lender. This practice of prearranging the assignment of commercial paper is a regular and essential part of Clearview's [Watson's] business and is, as the district court concluded, tantamount to arranging for the extension of credit. *Meyers, supra*, at 728. Consequently, in this factual setting, both appellants are 'creditors' under the Act, Clearview [Watson] as the credit arranger and

Chrysler Credit [Ford Motor Credit] as the credit extender."

*Id.* at 515.

Since, following *Meyers*, we find that both Watson and Ford Motor Credit were creditors under the Truth in Lending Act, in order to allocate liability between the two, we must look to the provisions of 12 C.F.R. § 226.6(d) which regulates disclosure when there are multiple creditors.

"If there is more than one creditor in a transaction, each creditor shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer. If two or more creditors make a joint disclosure, each creditor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8."

*Meyers* referred only briefly to § 226.6(d) in a footnote. The Court used § 226.6(d) to illustrate that although there were multiple creditors, there was only one credit sale and one disclosure statement. It concluded that only one penalty should be imposed—the amount of the penalty to be split between those liable. In short, the Fifth Circuit considered § 226.6(d) only insofar as it implies a "single recovery" rule; the Court did not deal with § 226.6(d) in any other aspect.

There have been few judicial interpretations of this relatively new Truth in Lending regulation. One was offered by the Third Circuit in *Manning v. Princeton Consumer Discount Co.*, 3 Cir. 1976, 533 F.2d 102. In that case the plaintiff arranged to buy a used car from the seller. The seller then made certain preparations with the defendant finance company and drove the plaintiff to the finance company where she signed documents, received a disclosure sheet and received a check which she in turn endorsed to the seller for the car. The finance company made *consumer loan* disclosures. However, neither the finance company nor the seller made any of the *credit sale* disclosures required by the Truth in Lending Act. The Court found that the transaction when viewed as a whole was indeed a credit sale, and that both the seller and the finance company were creditors. It then considered whether one or both were liable for the failures to disclose.

"While § 121, 15 U.S.C. § 1631, says that each creditor shall disclose to each person the information required, the Board has not considered that section as being applicable to the multiple creditor transaction. Practical considerations lead to the conclusion that needless duplication of information extended to consumers is neither necessary to the Act's purpose nor justifiable in terms of expense. To clarify the situation, the Board promulgated a regulation, 12 C.F.R. § 226.6(d) . . . . .

"In short, we hold that if the transaction is one in which the seller arranges credit, the obligation of disclosure is placed upon him by the third sentence of Regulation § 226.6(d). In that factual situation the specific direction of the third sentence prevails over the general language limiting the scope of disclosure to items within the creditor's knowledge and the purview of his relationship with the customer.

"If the seller is divorced from the credit arrangement, then the lender must supply the information which pertains only to the amount of money being received and its cost, without reference to the underlying sales transaction. Because the burden of full disclosure was placed upon the seller, it is our view that if additional and duplicative disclosure had been intended, the regulation would have set that forth with equal explicitness."

*Id.* at 105–06. *Manning* therefore found the seller solely liable in a multiple creditor situation. *See also Boggan v. Euclid National Bank*, N.D.Ohio 1974, CCH Consumer Credit Guide ¶ 98,674.

The Tenth Circuit in the recently decided *Hinkle v. Rock Springs National Bank*, 10 Cir. 1976, 538 F.2d 295 took a different

approach to § 226.6(d). That case involved the credit sale of a mobile home to the plaintiff. The Court found that both the seller, Adams Sales, and the bank which made the loan were creditors within the meaning of the Truth in Lending Act, and found both liable for the failure to disclose. The particular facts of the case are necessary to an understanding of the Court's conclusion:

"The record shows that Adams, as seller of the mobile home, used sales agreement forms provided by the defendant Bank, but Adams had much of the information which should have been included in the disclosures, as contemplated by the forms and otherwise. It appears that there was some sort of a continuing business relationship between Adams and the Bank. There was testimony that Adams relied on the Bank for guidance on meeting various legal requirements. It also appears that the plaintiffs had previous dealings with the Bank.

"As to the Bank, it also was to provide information necessary for the completion of the disclosure requirements. It was to provide the interest rate upon which, of course, other computations basic to the cost of credit depended, including the amount of the installments and the total finance charges. Adams apparently did not have the interest rate at the time he negotiated with the plaintiffs. The fact that the seller, Adams, could have made inquiry to determine it, and make the computations, makes no difference in view of the fact it did not do so. The Bank was the payee of the installment note later executed by the plaintiffs, and delivered by Adams to the Bank.

"It is apparent that Adams and the Bank each hid information required to be disclosed. . . . Regulation Z contemplates that when there are several 'creditors' they each shall be responsible for disclosures which are within the scope of its relationship with the consumer. 12 C.F.R. § 226.6(d) and of data they possess."

*Id.* at 296–97. Although the Court found both the seller and the Bank liable, *Hinkle*

does not authorize the automatic imposition of liability on each party found to be a creditor. Instead, the Court discussed the areas in which each had fallen short. Its finding of liability was predicated on a determination that both the seller and the Bank had each failed to make disclosures "which [were] within the scope of its relationship with the consumer . . . and of data they possess."

We believe that the *Hinkle* case represents the more reasoned view of § 226.6(d), and the one best supported by the language of that provision. The conclusion reached by the *Manning* case hinged entirely on the final sentences of § 226.6(d):

"The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8."

But this statement does not impose exclusive liability on the seller. Rather, it is a mere mechanical directive in order to eliminate confusion when multiple creditors issue a single disclosure statement. It requires that when a joint disclosure is made, as referred to in the immediately preceding sentence, the seller is the one who must physically deliver the disclosure statement to the consumer. The statement is not phrased in terms of an allocation of liability. In fact, the only possible liability which could attach by virtue of this statement in isolation from the rest of the provision, would be in the case when the seller gives the consumer no disclosure statement at all. Liability is dealt with in the first sentence of § 226.6(d) which speaks of who "shall be *responsible*", not the third sentence which speaks of who shall *make* the disclosures. In view of the fact that in multiple creditor situations, it is often only the seller who has any personal contact with the consumer, placing the duty of delivery on the seller makes good sense.

■ The first sentence of § 226.6(d) is a general instruction on the allocation of liability among multiple creditors.

"If there is more than one creditor in a transaction, each creditor shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer."

The test posed by this sentence applies whether each creditor issues his own disclosure statement or whether all creditors issue one joint statement. The test is two-pronged. Before finding one particular creditor among multiple creditors liable for a failure to disclose, it must be determined that (1) the information withheld was within his knowledge, and (2) the information withheld was within the purview of his relationship with the customer.

In our original opinion we found that the failure to disclose the exact amount of the notary's fee, and the failure to disclose the correct amount of license, title and registration fees were violations of the Truth in Lending Act. Clearly the latter item is only "within the knowledge" of the seller Watson. These fees must be collected for every car sold, whether or not it is a credit sale. In every case Watson makes all arrangements concerning these fees and forwards the money to the correct State agency. This is within the "purview" of the seller-consumer relationship.

We also find that in this case the precise amount of the notary's fee was an item solely "within the knowledge" of the seller Watson and within the "purview" of its relationship with the plaintiff. Watson employed the notary on retainer. Ford Motor Credit never saw the notary or had anything to do with him.

Therefore, despite the fact that we find both Watson and Ford Motor Credit were creditors under the *Meyers* case, we find that only Watson is liable for the particular violations in this case in accordance with the terms of 12 C.F.R. § 226.6(d).