**Janet M. MANNING, on behalf of herself and all others similarly situated,**

v.

**PRINCETON CONSUMER DISCOUNT COMPANY, INC., and Springfield Dodge, Inc.**

Civ. A. No. 74–875.

United States District Court,
E. D. Pennsylvania.

Jan. 31, 1975.

See also, D.C., 380 F.Supp. 116.

**322**

David A. Scholl, Delaware County Legal Assistance Assn., Inc., Chester, Pa., for plaintiff.

Alan C. Gershenson, Philadelphia, Pa., for Princeton Consumer Discount Co., Inc.

John J. Robinson, Upper Darby, Pa., for Springfield Dodge.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff, Janet Manning, alleges that defendants violated the federal Truth-in-Lending Act[1] by treating the credit sale of an automobile to her as a consumer loan, thus depriving her of certain information which the Act requires to be disclosed in credit sales but not in consumer loans.[2] Plaintiff seeks to be certified as the representative of a class of those who have had credit purchases written as though they were separate sale and loan transactions, but she asks that we postpone deciding the class action question until after we determine her pending motion for summary judgment on her individual claim. Defendant Springfield Dodge opposes summary judgment on the grounds that certain material facts remain to be decided. Defendant Princeton has moved for summary judgment on the grounds that the Truth-in-Lending Act imposes on Springfield, and not on it, the duty of making any disclosures not made to plaintiff.

We cannot accept plaintiff's argument that we may postpone class certification until after liability is decided. Therefore we address the class action question first, and conclude that this suit is a proper class action suit under Rule 23(b)(2). Finding that no disputes as to material facts exist, we grant summary judgment on plaintiff's behalf against Springfield Dodge, and on Princeton's behalf against plaintiff, on the question of liability. We award plaintiff $1,000., as well as a reasonable attorney's fee and costs, and we enter an injunction on behalf of plaintiff and the members of her class against future violations of the Truth-in-Lending Act by Springfield Dodge.

## FACTS

The following facts are undisputed. On March 2, 1974, plaintiff agreed to purchase an automobile from defendant Springfield Dodge. Plaintiff made a downpayment of $300., and it was agreed that Springfield would obtain financing for the balance. In order to do

---

1. 15 U.S.C. § 1601 (1968).

2. Section 129 of the Act, 15 U.S.C. § 1639, which regulates "consumer loans", requires that the obligee provide the obligor with the amount of credit of which the obligor will have the use, the amount of the finance charge, the finance charge expressed as an annual percentage rate, the number of periodic payment periods and the amount due thereon, the amount of delinquent charges, and the description of any security interest to be retained or acquired by the obligee. Section 128 of the Act, 15 U.S.C. § 1638, regulating "sales not under open end credit plans", requires the disclosure of the information required by Section 129 plus the total cash price, the downpayment, and the unpaid cash balance. Plaintiff received from defendant Princeton the information required to be disclosed by Section 129 but not the additional information required by 128.

this, a Springfield employee obtained information from plaintiff concerning her income, assets, and expenses.

Approximately one week later plaintiff was instructed to return to Springfield Dodge, from where she was driven by a Springfield employee to the offices of defendant Princeton Consumer Discount Company. Plaintiff had never done business with, nor heard of, Princeton prior to this time. When plaintiff arrived at Princeton, the contract documents concerning a loan to her in the amount of the unpaid balance on the car were already prepared.

Plaintiff had already been informed of the terms of the loan contract by a Springfield officer prior to her trip to Princeton. Before signing the contract she was informed by a Princeton employee that Princeton assumed no liability for the condition of the car and that she should make certain she was satisfied with the car before she endorsed Princeton's check over to Springfield. After she signed the contract, the Princeton employee gave directly to the Springfield salesman a check made out to the plaintiff and to Springfield Dodge for $1,191.00 and gave to the plaintiff a check made out to her for $11.84. The salesman then drove plaintiff back to Springfield Dodge, where they picked up the automobile. He directed her to endorse the check for $1,191.00 over to Springfield, which she did.

Plaintiff does not allege that the seller, Springfield Dodge, extended credit to her, but rather that the seller arranged for the extension of such credit, which would bring the transaction within the definition of a credit sale under Section 103(g) of the Truth-in-Lending Act, 15 U.S.C. § 1602(g).[3] To determine whether the seller did arrange for credit as

that phrase is to be construed, we must turn to regulation Z of the regulations promulgated by the Federal Reserve Board pursuant to the Act. In regulation Z is found a definition of the phrase "arrange for the extension of credit", 12 C.F.R. § 226.2(f):

> " 'arrange for the extension of credit' means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. . . . "

Plaintiff asserts that the undisputed facts compel that Springfield arranged for the extension of credit within the meaning of regulation Z. Defendants argue that the regulation is intended to require *both* the receipt of a fee *and* participation in the preparation of the contract documents required in connection with the extension of credit. Defendants have offered no support for this interpretation, and we believe that it is a strained and unconvincing one. A much more logical explanation is that the regulation requires either receipt of a fee or knowledge of the contract's terms and participation in drawing it up. See, Starks v. Orleans Motors, Inc., 372 F.Supp. 928 (E.D.La.1974).

CLASS ACTION

Plaintiff seeks to represent, under Rule 23(a)(1–4) and (b)(2), a class of all those who have been, are being, or will be denied the disclosures required under Section 128 of the Truth-in-Lend-

---

3. Section 103(g) of the Truth-in-Lending Act reads as follows: "The term 'credit sale' refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in the excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract."

ing Act by having their credit purchases treated as separate sale and loan transactions. In addition, plaintiff seeks to have the defendants certified as representatives of a class of those seller and creditor institutions who write credit sales as if they were separate sales and loans.

■ Plaintiff, relying on the case of Katz v. Carte Blanche Corp., 496 F.2d 747 (3rd Cir. 1974), cert. denied 419 U. S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), asks us to defer ruling on her class certification motion until after we rule on her pending summary judgment. We do not feel that the circumstances of this case warrant a *Katz*-like suspension of the plain language of Rule 23(c)(1) that:

> "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."

In *Katz*, the Third Circuit reversed the trial Judge's refusal to consider, at the defendant's request, the possibility of a test case as an alternative to a class action as a part of determining that the class action approach was superior to other available methods of adjudication. To begin with, we are not called upon to make a "superiority" determination in conjunction with a (b)(2) certification request. Second, and more important, defendant has not agreed to defer the class certification decision. The *Katz* defendant's preference for delaying certification was heavily emphasized by the court in justifying the "one-way street" which would result if class members were allowed to intervene after a defendant's liability had already been established.

■ In order to simplify the certification decision we will first address plaintiff's motion to certify defendants as representatives of all sellers and consumer creditors who participate in transactions where credit is arranged for by the seller but where only Section 129 disclosures are made. We believe plaintiff has not met her burden of showing that defendants meet the requirements of 23(a)(1–4) and (b)(2). While plaintiff alleges that there is an industry-wide practice of treating credit sales as if they were loan transactions she has failed to substantiate this allegation by estimating the number of those concerns which engage in specific conduct identical or similar to that of defendants. Plaintiff has thus failed to meet the "numerosity" requirement 23(a)(1), the "typicality" requirement, 23(a)(3), or the requirement that the alleged defendant class "have acted . . . on grounds generally applicable to the class [of plaintiffs]." To say that the legality of defendants' conduct is a question of law common to defendants and the class plaintiff seeks to have them represent is meaningless without the presentation of some facts showing that the conduct of the putative class is similar to the named defendants'. Rule 23(a)(2). We decline to certify defendants as representatives of a class.

■ The class plaintiff seeks to represent thus becomes a class of those who the named defendants have denied, or will in the future deny, certain disclosures. Plaintiff has satisfied the requirements of 23(a)(1–4) and (b)(2) as to this class. Defendants' answers to interrogatories show that between June, 1973 and June, 1974 Springfield Dodge sold cars to 14 persons besides plaintiff which were financed under circumstances similar to plaintiff's, including the payment of a referral fee by Princeton. This evidence satisfies the numerosity, typicality, and common question requirements, 23(a)(1–3), as well as the "grounds generally applicable" requirement of (b)(2). As for the adequacy of plaintiffs' representation, 23(a)(4), we find no cause to believe that plaintiff's individual interests conflict with those of any class member, and we find that plaintiff's counsel is experienced in litigation similar to the present one.

Plaintiff's certification as a (b)(2) class representative entitles her to seek an injunction which will apply to cover

the entire class,[4] but does not enable her to press any monetary claims except her own. Paddison v. Fidelity Bank, 60 F. R.D. 695 (E.D.Pa.1973).

## SUMMARY JUDGMENT

■ The undisputed facts in this case establish that defendant Springfield Dodge arranged for the extension of credit, that the sale of the automobile to plaintiff was a credit sale under Section 128, and that plaintiff did not receive the disclosures required by that section. Defendants' answers to plaintiff's interrogatories reveal that Princeton paid Springfield a five percent referral fee on the transaction involving plaintiff as well as the other 14 individuals to whom Springfield sold cars which were . financed by Princeton between June, 1973 and June, 1974. Even if defendants' theory that the receipt of a fee and participation in the preparation of the loan contract documents are both required to make Springfield an "arranger of credit" under regulation Z, the undisputed evidence shows that Springfield participated in preparing the loan documents. Springfield obtained the necessary credit information from plaintiff. Springfield also told Princeton what items the loan contract should include, what its total amount should be, how many periodic payments there should be, and what the amount of each periodic payment should be. We do not believe that a seller actually has to hold the pen that drafts the loan contract before it can be deemed a participant in its preparation.

One question remains before the summary judgment motions can be disposed of: *who* has the duty to disclose when the seller arranges for credit? The seller, the creditor, or both? Section 128 states that *"the* creditor shall disclose each of the following items . . . ." (emphasis added). This language seems to imply that one party shall make the disclosures. Defendant

Princeton contends that Springfield is that party, and in support cites an advisory letter written by the Director of the Federal Reserve Board on June 4, 1970, and published in CCH Consumer Credit Guide ¶30, 399. The letter, in pertinent part, reads as follows:

"If the builder is an arranger of credit he would be required to disclose in accordance with § 226.8(b) and (c) of the Regulation before consummation between the purchaser and the creditor. That is insofar as the builder is concerned, this transaction would be a 'credit sale', subject to the above mentioned provisions.

"The lending institution, however, could make disclosures under the loan provisions of § 226.8(b) and (d) of the Regulation, or the builder-arranger and the lending institution could join in making a single disclosure statement under § 226.8(b) and (c) as a credit sale."

■■ Although advisory interpretations such as the one quoted above are not binding on this Court, it is usually held valid unless it is plainly erroneous or inconsistent with the statute. Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S. Ct. 1215, 89 L.Ed. 1700 (1945); Philbeck v. Timmers Chevrolet, Inc., 361 F. Supp. 1255 (N.D.Ga.1973). The interpretation seems to rest on common sense as well. Why require two parties to give a buyer identical disclosure forms? How would a buyer be harmed if only one party made the required disclosures, and if he would not be harmed why should the non-disclosing party be held liable? Once it is conceded that only one party should be required to disclose, it logically follows that the seller is that party. The seller who arranges for the extension of credit is more likely than the lender of the credit to know the information required by § 128 but not by § 129, i. e., cash downpayment, total cash price, and unpaid cash balance.

---

**4.** Defendant Princeton asserts that plaintiff's complaint does not request an injunction against Truth-in-Lending violations. While a narrow reading of plaintiff's complaint could support the conclusion that she was

requesting injunctive relief as to her state claims only, we believe that she was requesting injunctive relief against a practice which allegedly violated both federal and state law.

In our earlier Memorandum denying defendant's motions to dismiss plaintiff's complaint we declined to dismiss the complaint against Princeton on the basis of the Federal Reserve Board Director's letter. That Memorandum emphasized the letter's advisory nature and the Court's ignorance of the specific facts which the Director had in mind when he wrote the letter. However, since that time the Court has been made aware that this letter carries, in certain circumstances, more than advisory status. More importantly, we feel less reluctant to enter summary judgment on the strength of such authority after plaintiff has had sufficient time in which to find opposing authority or develop countervailing arguments than we would to grant a motion to dismiss on this basis.

Plaintiff cites numerous cases [5] in support of its proposition that the Act compels both defendants to make the Section 128 disclosures, but these cases all involved a credit company who used a seller as a contact to obtain creditors and to whom the credit obligation would immediately be assigned by the seller. These cases have all found non-parties to the sales contract to be liable on the theory that the subsequent assignment of the contract to that party implied that the seller was merely that party's conduit for obtaining creditors. The sales contract in this case was not assigned to Princeton, and there does not seem to be any other basis to apply the reasoning of these cases to the present facts.

## DAMAGES

■ The Truth-in-Lending Act entitles a successful plaintiff to recover "twice the amount of the finance charge in connection with the transaction, except that liability . . . shall not be less than $100 nor greater than $1,000;", 15 U.S.C. § 1640(a)(1), as well as ". . . the costs of the action together with a reasonable attorney's fee . . .", 15 U.S.C. § 1640(a)(2). Plaintiff's finance charge in this transaction was $558.78 (See Exhibit "A" to Plaintiff's Complaint); plaintiff is thus barred by the proviso to § 1640(a)(1) from receiving more than $1,000. This Court will conduct a further proceeding to determine a reasonable attorney's fee in this case.

## PLAINTIFF'S REFORMATION CLAIM

■ In this Court's earlier Memorandum, plaintiff's state law claims were dismissed on the grounds of comity. Plaintiff has at this time pointed out that she asked for reformation of the transaction with Princeton so as to exclude the disability, credit life, and property insurance purchases. This claim was not briefed by either side at the time the Court rules on defendants' motions to dismiss. It would not appear to be included in those claims for which pendant jurisdiction should not be exercised because of comity. However, from the evidence presented to us by both parties, it is clear that reformation is unwarranted in this case. The evidence shows that the Section 129 statement given to plaintiff before she signed the contract revealed that these insurance policies were included in the contract, and there can be no question that the contract faithfully recorded the agreement of both parties that these matters be included. Judgment will therefore be awarded against plaintiff on this claim.

5. Starks v. Orleans Motors, Inc., 372 F.Supp. 928 (E.D.La.1974); Kriger v. European Health Spa, Inc., 363 F.Supp. 334 (E.D. Wis.1973); Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255 (N.D.Ga.1973), rev'd. on other grounds, 499 F.2d 971 (5th Cir. 1974); Garza v. Chicago Health Clubs, Inc., 347 F.Supp. 955 (N.D.Ill.1972).