**Fred W. SMITH, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**LEWIS FORD, INC., Union Planters National Bank, Inc., and Ford Motor Credit Company, Inc., Defendants.**

Civ. C–78–2244.

United States District Court, W. D. Tennessee, W. D.

Sept. 26, 1978.

James L. Kacena and Lillian L. Dykes, Law Offices of Schaeffer & McDougal, Memphis, Tenn., for plaintiffs.

Leo E. Bearman, Jr., Memphis, Tenn., for Lewis Ford, Inc.

Glen G. Reid, Jr., Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for Union Planters Nat. Bank, Inc.

Freeman C. Marr and R. Lanier Fogg, Hankins, Marr, Rose & Fogg, Memphis, Tenn., for Ford Motor Credit Co., Inc.

## ORDER DENYING MOTION TO DISMISS BY DEFENDANT UNION PLANTERS NATIONAL BANK, INC.

BAILEY BROWN, Chief Judge.

Defendant Union Planters National Bank, Inc., one of three defendants in this action, moves to dismiss the complaint against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiff has sued all three defendants for alleged violations of the Federal Consumer Credit Protection Act (also known as the "Truth-in-Lending" Act), 15 U.S.C. § 1601 et seq. Plaintiff claims that all defendants have violated § 1638(a)(4) by failing to itemize individually certain charges connected with plaintiff's purchase of a truck on an installment sales plan. Plaintiff also alleges that defendants have violated § 1631 by not making clear and conspicuous disclosures in the installment sales agreement.

Plaintiff appears to have purchased the truck from defendant Lewis Ford, Inc. which arranged financing of the truck through defendant Union Planters National Bank, Inc. (hereinafter "UPNB"). UPNB contends that plaintiff has failed to allege a violation of the stated sections of the Truth-in-Lending Act and, in addition, that even if a violation has occurred, the sole responsibility for complying with the requirements of these sections rests with the defendant Lewis Ford, Inc. as dealer. This court will address these contentions in reverse order.

I. *UPNB Is a "Creditor" Within the Definition of the Act.*

■ At the outset, it must be determined whether UPNB is a "creditor" within the scope of the Act. If not, UPNB cannot be held responsible for the alleged violations. Sec. 1602(f) states:

The term "creditor" refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

The complaint is not very specific as to the terms of the credit extended. However, for purposes of a motion to dismiss, the facts are to be construed in favor of the plaintiff. It is not disputed by UPNB that it regularly extends credit in situations of this kind or that a finance charge was exacted in this instance. While UPNB asserts that it should be considered a subsequent assignee of the contract between plaintiff and the dealer rather than a "creditor," numerous cases have held that a party is a "creditor" if he extends credit to a consumer as part of arrangements made by the seller in completing the transaction. *Price v. Franklin Investment Company, Inc.,* 187 U.S.App. D.C. 383, 388–389, 574 F.2d 594, 599–601 (1978); *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 514–516 (5th Cir. 1976), *cert. den.* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977); *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 91–93 (8th Cir. 1976). While the exact procedure through which credit was extended to plaintiff is not spelled out in the complaint, this court must assume that this financing arrangement was of the type that is routinely arranged at the time of sale. Thus, UPNB is held to be a "creditor" required to comply with the provisions of the Act.

II. *Responsibility for Disclosure Rests on UPNB as Well as the Seller.*

■ UPNB further contends that, even if it is found to be a "creditor" within the definition of § 1602(f), it is exempted from the disclosure requirements of § 1638 by the Federal Reserve Board's Regulation Z—in particular, 12 C.F.R. § 226.6(d). Sec. 226.-6(d) provides:

(d). *Multiple creditors or lessors; joint disclosure.* If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15.

UPNB asserts that this section places sole responsibility for the disclosure at issue here on the vehicle seller, relying on the interpretation of this regulation by the Third Circuit in *Manning v. Princeton Consumer Discount Company, Inc.,* 533 F.2d 102, 105–106 (3rd Cir. 1976), *cert. den.* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976), *reh. den.* 429 U.S. 933, 97 S.Ct. 342, 50 L.Ed.2d 303 (1976). Under § 1604, the Federal Reserve Board is given broad authority to prescribe regulations to carry out the purposes of the Act. Thus if UPNB's interpretation of this regulation is correct, this motion should be granted.

The Third Circuit in *Manning* relied heavily upon the language of the last two sentences of § 226.6(d). As the Third Circuit pointed out, paragraph (c) of § 226.8, referred to in the third sentence of § 226.6(d), corresponds to the disclosure requirements of 15 U.S.C. § 1638 which deals with credit *sales.* It is that section which is at issue in this case. The Third Circuit determined that the third sentence of § 226.6(d) puts the disclosure burden on the *seller* alone, and that the last sentence of § 226.6(d) puts the burden on the credit extender (such as UPNB) only if the transaction is not a credit sale but is instead a loan. The Third Circuit concluded:

In short, we hold that if the transaction is one in which the seller arranges credit, the obligation of disclosure is placed upon him by the third sentence of Regulation § 226.6(d). In that factual situation the specific direction of the third sentence prevails over the general language limiting the scope of disclosure to items within the creditor's knowledge and the purview of his relationship with the customer.

533 F.2d at 105.

This is certainly a plausible interpretation of the subsection. But, as the Third Circuit acknowledged, "[t]he language is far from clear." *Id.* It is important to note that the third sentence does not say that the seller is *solely* responsible. Indeed, as the Third Circuit noted, such an interpretation is somewhat in conflict with the first sentence of the subsection. It would be more consistent to interpret the third sentence as spelling out the circumstances in which the seller is required to make disclosures regardless of the responsibility of the credit extender. The last sentence would then apply to situations in which the seller is not considered a creditor, but would not relieve the credit extender of responsibility where the seller *is* a creditor.

What seems clearest, however, is that the language is very unclear. In addition to the interpretations offered by *Manning* and by this court, there have been various other interpretations of this subsection. See *Hinkle v. Rock Springs National Bank*, 538 F.2d 295, 297 (10th Cir. 1976); *Williams v. Bill Watson Ford, Inc.*, 423 F.Supp. 345, 356–357 (E.D.La.1976); *Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928, 931 (E.D.La.1974), *aff'd* 500 F.2d 1182 (5th Cir. 1974). Indeed, most cases that have found more than one "creditor" have automatically assumed that both creditors could be held liable without discussing the implications of § 226.6(d). See *Meyers, supra; Joseph, supra; Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976). Absent a contrary regulation by the Federal Reserve Board, the Act itself seems to provide for joint responsibility for disclosures. Sec. 1631(a) states:

*Each* creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.

(Emphasis added.)

This court is reluctant to hold that the vague language of § 226.6(d) is sufficient to counter the apparent intent of the Act that "each creditor" be required to make the appropriate disclosures. As the District of Columbia Circuit said in *Price, supra*:

. . . We are loathe in the absence of clearly compelling language to adopt a reading [of § 226.6(d)] that would permit a finance company to escape all liability for nondisclosures by enlisting a seller of goods to arrange for an extension of credit.

174 U.S.App.D.C. at 389, 574 F.2d at 601. Therefore, this court declines to follow the reasoning of the *Manning* case, and holds that the third sentence of § 226.6(d) does not put the exclusive burden of disclosure upon the seller.

It must be noted, however, that the first sentence of § 226.6(d) requires each creditor to make "only those disclosures . . . which are within his knowledge and the purview of his relationship with the customer or lessee." UPNB does not state any facts to support an argument that the disclosures at issue here were not within its knowledge or within the purview of its relationship with the plaintiff. However, this court points out that, in the *Williams* case, *supra*, the district court found that license, title and registration fees were solely within the knowledge of the seller. This court will entertain further argument on this point at trial.

### III. The Itemization Requirements of the Act Apply to the Charges in Question.

Plaintiff alleges that a charge of $26.75, listed beside the heading "Other Charges" in the contract, was required by § 1638(a)(4) to be further broken down into three separate charges for a documentary fee, a state transfer fee, and a city transfer fee.

UPNB asserts, and plaintiff seems to agree in his memorandum opposing this motion, that the charge of $26.75 appeared beside a further subheading "License and/or Registration." The question for this court is whether the Act and accompanying regulations require such fee to be itemized at all, and, if so, whether the subheading "License and/or Registration" is sufficient itemization.

As seems common to questions under this Act, there is some confusion as to the meaning of the basic sections of the Act and regulations at issue here. This confusion was pinpointed most clearly by the district court in *St. Germain v. Bank of Hawaii*, 413 F.Supp. 587, 606–609 (D.Hawaii 1976). Part of this confusion stems from the fact that there are two separate provisions in the Act requiring itemization of charges not included in the finance charge—§ 1638(a) and § 1605(d).

Sec. 1638, relied upon by plaintiff, imposes disclosure requirements for credit sales, providing in part:

(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:

. . . . .

(4) All other charges, *individually itemized*, which are included in the amount of the credit extended but *which are not part of the finance charge.*

(Emphasis added.)

The relevant portions of § 1605(d) read:

(d) If any of the following items is *itemized* and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:

(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

. . . . .

(3) Taxes.

(4) Any other type of charge which is *not for credit* and the exclusion of which from the finance charge is approved by the Board by regulation.

(Emphasis added.)

The regulation accompanying this subsection, 12 C.F.R. § 22ɔ.4(b), elaborates on what may be excluded from the finance charge:

(3) Taxes not included in the cash price.

(4) License, certificate of title, and registration fees imposed by law.

As can be seen, there is a good deal of overlap between § 1638(a)(4) and § 1605(d), although the former is limited in its application to credit sales. There is so much overlap, in fact, that both plaintiff and UPNB relied on cases which primarily focused on § 226.4, which accompanies § 1605(d), rather than § 226.8(c)(4), which corresponds to § 1638(a)(4)—the section under which the violation allegedly occurred.

UPNB relies heavily upon *St. Germain, supra,* for its interpretation of §§ 226.4 and 226.8(c)(4) of Regulation Z. In *St. Germain,* plaintiff entered into an installment sales contract for the purchase of an automobile, which contract contained the heading "TITLE TRANSFER AND/OR RECORDING FEES" followed by the notation "Included." This was determined to mean that a $1.00 title transfer fee and a $2.00 fee imposed by state law for the replacement of lost or defaced certificates were included within the cash price of the vehicle. Plaintiff claimed that this inclusion violated §§ 226.4(b)(4) and 226.8(c)(4) of Regulation Z.

The district court first determined that § 226.4(b)(4) was not violated, finding that § 1605(d) only comes into play after an item has been found to be part of the "finance charge" under § 1605(a) and 12 C.F.R. § 226.4(a). These sections define what is meant by the term "finance charge." Sec. 226.4(a) reads, in part:

(a) *General rule. Except as otherwise provided in this section*, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor *as an incident to or as a condition of the extension of credit* . . . .

(Emphasis added.) The district court, after reviewing conflicting staff opinions issued by the Federal Reserve Board, concluded that § 1605(d) and § 226.4(b) only exempted from inclusion within the finance charge those items which could have been included within the finance charge in the first place under § 1605(a) and § 226.4(a). The court determined that the fees which were labeled "Included" were not imposed "as an incident to or as a condition of the extension of credit" since they were charged in cash as well as credit transactions. Thus, the court held that individual itemization was not required under § 1605(d).

■ The fees which were not itemized in the instant case are apparently of a similar nature. A documentary fee, a state transfer fee, and a city transfer fee do not appear to be the type of fee "imposed . . . as an incident to or as a condition of the extension of credit." Thus, if *St. Germain* is followed in this aspect, no itemization is required under § 1605(d). However, this court believes that the reasoning in *St. Germain* is erroneous. Part of the problem is that the language of § 1605(d) is contradictory. The introductory clause implies that if the charge in question is *not* itemized or disclosed as provided, then it must be included within the finance charge. The *St. Germain* court assumed that such a charge would have to meet the requirements of § 1605(a) defining "finance charge." But the conflict comes in the language of § 1605(d)(4) which provides for exception from the finance charge, upon proper itemization and disclosure, of "[a]ny other type of charge which is *not for credit*" if exemption is approved by the Board (emphasis added). Since the charge mentioned by § 1605(d)(4) is "not for credit" and the finance charge defined by § 1605(a) is "im-

posed . . . as an incident to the extension of credit," § 1605(d)(4) would be rendered completely meaningless if it could only apply to charges which come within the definition of "finance charge" under § 1605(a). Thus this court holds that § 1605(d) can apply to charges which come within its provisions even if they are not within the definition of "finance charge" under § 1605(a). This interpretation is bolstered by the first sentence of § 1605(a), which, in defining "finance charge," begins: "Except as otherwise provided in this section . . . ." This indicates that the § 1605(a) definition of finance charge is not exclusive, and that the choice offered the creditor by § 1605(d)(4) can be exercised without regard to the definition of "finance charge" in § 1605(a).

The regulations of the Board also support this view. As indicated earlier, 12 C.F.R. § 226.4(b) provides:

. . . If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge: . . .

(4) License, certificate of title, and registration fees imposed by law.

It is difficult to see how fees for a certificate of title, for example, would ever fall within the definition of "finance charge" under § 226.4(a) since it would be a rare case where such fees would be "imposed . . . as an incident to or as a condition of the extension of credit." If the *St. Germain* reasoning were adopted, such fees would never have to be itemized under this regulation because they would never fall within the definition of "finance charge," thus rendering the regulation meaningless. The *St. Germain* conclusion is contrary to three cases from the Fifth Circuit, although they did not discuss the complexities of the statute pointed out by *St. Germain*. See *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976); *Meyers, supra*, at 518–519; *Starks, supra*, at 932.

As for § 1638(a)(4), it requires each creditor in a credit sale to disclose:

**1144**

(4) All other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge.

Although not specifically addressed by plaintiff, this court will assume that the charges at issue in this case are allegedly "included in the amount of the credit extended" since plaintiff filed the complaint under this section.

In *St. Germain, supra,* the district court held that, under this subsection, a creditor had the option of either individually itemizing the charges in question or including them in the total cash price of the vehicle. In reaching this conclusion, the court relied on an interpretation by the Board staff which stated: ". . . [F]ees could be included in the cash price under § 226.2(i) [now § 226.2(n)] and the disclosure of § 226.8(c)(1) or they could be included in other charges under § 226.8(c)(4). The Regulation does not prescribe one treatment over the other." 4 CCH Consumer Credit Guide ¶ 30,935. This staff interpretation seems contrary to the definition of "cash price" contained in 2 C.F.R. § 226.2(n), which reads:

(n) "Cash price" means the price at which the creditor offers, in the ordinary course of business, to sell for cash the property or services which are the subject of a consumer credit transaction. It may include the cash price of accessories or services related to the sale . . ., and may include taxes to the extent imposed on the cash sale, *but shall not include any other charges of the types described in § 226.4.*

(Emphasis added.) As has been discussed, of course, among the types of charges described in § 226.4 are "License, certificate of title and registration fees imposed by law." Thus the staff interpretation appears to be at odds with the Board's own regulation. See *Meyers, supra,* at 518–519. This conclusion is further buttressed by comparing the language of §§ 226.4(b)(3) and (4). The former requires either itemization and disclosure or inclusion in the finance charge of "Taxes *not included in*

*the cash price.*" (Emphasis added.) As for the license, title and registration fees which are the subject of § 226.4(b)(4), no mention is made of cash price. The inference to be drawn from this comparison is that the latter are not permitted to be included in the cash price, contrary to the staff interpretation.

Even if the staff interpretation were considered correct, however, that would not aid UPNB here, since UPNB does not claim that it included these fees within the cash price charged plaintiff, but rather that it listed the fees under the heading "License and/or Registration." Since this court has so far held that the itemization requirements of the Act and Regulation Z apply to the fees in question here, the only remaining question is whether the itemization in the contract was, in fact, sufficient.

IV. *The Act Requires Separate Disclosure of the Charges in Question.*

The Fifth Circuit has held that combining charges under a simple heading of "Tag, Title and Fees" violated the disclosure requirements of the Act, finding that separate disclosure and itemization were necessary. *Meyers, supra,* at 518–519. Given the language of § 1638(a)(4) that such charges must be "individually itemized" and the language of 12 C.F.R. § 226.4(b) (accompanying § 1605(d)) that such charges must be "itemized and disclosed," this court is inclined to agree with that interpretation, and finds that the fees at issue here should have been individually and separately itemized.

UPNB, however, points to an official staff interpretation of § 226.4(b)(4) which declared

. . . that the three components within ¶ 226.4(b)(4) [license, certificate of title, and registration fees] *need not be separately itemized*; if a creditor discloses the total fee comprising the three components and indicates the type of fees included within that total, such fee qualifies for exclusion from the finance charge.

CCH Consumer Credit Guide Special Correspondence Transfer Binder ¶ 30,385. (Emphasis added.) This staff opinion, although entitled to great weight, is not binding on this court. *Pollock v. General Finance Corporation*, 552 F.2d 1142, 1144–1145 (5th Cir. 1977), *cert. den.* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 976 (5th Cir. 1974). As indicated, this court finds the interpretation contrary to the language of the Act, and therefore finds that individual itemization was required. Despite this holding, however, it appears that this staff interpretation would provide UPNB with an affirmative defense. Sec. 1640(f) provides:

> (f) No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board *or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor*, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(Emphasis added.) Plaintiff relies on *Ives v. W. T. Grant Company*, 522 F.2d 749 (2nd Cir. 1975) for the proposition that official staff interpretations do not provide a defense under § 1640(f). However, *Ives* was decided before the portion of § 1640(f) highlighted above was added to the statute in 1976. Indeed, that amendment to the statute was apparently designed to alter the result reached in *Ives*.

UPNB's motion to dismiss under Rule 12(b) must still be denied, however, since the complaint does state a claim under the Truth-in-Lending Act. Sec. 1640(f) offers UPNB an affirmative defense which can only be considered by means of a motion for summary judgment under Rule 56.

For the foregoing reasons, the motion to dismiss is denied.

It is so ORDERED.