Terrell CHILDS, Plaintiff,

Carolyn Strickland, Intervenor,

v.

FORD MOTOR CREDIT COMPANY, Defendant.

Civ. A. No. 74–L–1011–S.

United States District Court,
N. D. Alabama, S. D.

May 24, 1979.

Jerry O. Lorant, Birmingham, Ala., for plaintiff.

J. Gusty Yearout, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for intervenor.

Charles Cleveland, Gordon, Cleveland & Gordon, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

The submission herein was on cross-motions for summary judgment, filed by plaintiff on November 4, 1977, and July 13, 1978, and by defendant on November 26, 1976, and July 17, 1978. On June 21, 1977, this Court entered an order certifying this cause as a class action under Rule 23(a) and (b)(3), FRCP. The class is defined as

> All persons who engaged in consumer credit transactions with Defendant, Ford Motor Credit Company, as a result of purchasing a motor vehicle from Bondy's Ford, Inc., 131 South St. Andrews Street, Dothan, Alabama, during the period of time from one year prior up to and including the date of filing the original complaint herein, or from September 5, 1973, through September 5, 1974, in which disclosure statements identical or substantially similar to the disclosure statement appended to the final amended complaint designated as Attachment "A" were utilized.

By order dated May 3, 1978, the class description was modified to include only those transactions occurring during the period from September 6, 1973, through September 5, 1974. Therein it was established that the individual class members had been identified and it was directed that notice required by Rule 23(c)(2), FRCP, of the action be given to the members of the plaintiff class.

Notices were mailed out and the following individual class members duly opted out: Carson McNeal, Maggie Lou Epps, Mathew M. Cospelich, and James A. Smith. The petition of Carolyn Strickland to intervene as party-plaintiff was granted on July 24, 1978.

## STATEMENT OF FACTS

The following facts are without dispute. The named plaintiff purchased a 1973 Ford pickup truck from Bondy's Ford, Inc., in Dothan, Alabama, in September 1973. A purchase order dated September 5 and a sales contract dated September 6 were signed by the plaintiff. On September 14, the sale contract was assigned to defendant, Ford Motor Credit Company. Copies of these documents appear of record.

## APPLICATION OF LAW

Plaintiff charges the defendant with three violations of the Truth in Lending Act, 15 U.S.C. § 1640 *et seq.*:

(1) Failure to print "annual percentage rate" and "finance charge" more conspicuously than other disclosures;

(2) Failure to identify itself as a creditor; and

(3) Failure to disclose certain components of the cash price.

### I. *First Contention*

The first is clearly without merit and has not been pursued by the plaintiff. A quick glance at the disclosure statement reveals that the various captions are all printed in bold face type with some words being capitalized. "Finance charge" and "annual percentage rate" are both in bold face and are totally capitalized. Clearly they are more conspicuous than those phrases which are not totally capitalized.

### II. *Is FMCC a "Creditor"?*

In order for defendant to be liable for failure to clearly identify itself and for shortcomings in the disclosure statement, it must be demonstrated that the defendant is a creditor. Regulation Z defines "creditor" to include, *inter alia,* "a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit." Hence, a credit sale may involve two creditors, one who arranges for the extension of credit, and one who actually extends the credit.

*Philbeck v. Timmers Chevrolet*, 361 F.Supp. 1255 (N.D.Ga.1973), *rev'd on other grounds* 499 F.2d 971 (5th Cir. 1974), held that a finance company is a creditor if it "works so closely with an extender of consumer credit that the finance company prepares the credit forms and the extender then executes those forms and regularly assigns the consumer credit contracts back [sic] to the finance company." This describes the situation in the case *sub judice*. The form shows on its face that it was prepared by Ford Motor Credit Company, and the size of the class is indicative of the regularity with which these forms were assigned to it.

Additional evidence of the fact that the extension of credit had been prearranged may be found in the documents involved. On the face of the contract is an assignment clause with the name of the Ford Motor Credit Company preprinted as the assignee. On the back is a clause detailing the terms of the assignment throughout which Ford Motor Credit Company is referred to. Also, the car invoice prepared by Bondy's Ford on September 7, states that the car is subject to a lien in favor of Ford Motor Credit in the amount of $2,242.91. This is the amount financed plus the finance charge.

Hence, it is clear that from the very inception of the loan it was intended that the creditor ultimately would be Ford Motor Credit. The technical legality that Ford Motor Credit could refuse the assignment and that the assignment did not take legal effect for several days does not alter the true nature of the transaction. Practically speaking, Bondy's Ford acted as the agent of Ford Motor Credit Company in arranging for the extension of credit. The conclusion, therefore, is that both constitute creditors under the truth-in-lending regulations. *Compare Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir. 1976).

### III. *Second Contention*

Under § 226.6(d), both creditors are obligated to clearly identify themselves. The contract used by Ford Motor Credit Company is originally in the form of five documents with carbons in between. At the top of the package of documents is the Ford insignia in an oval, followed by the phrase "Ford Motor Credit Company" in white against a dark blue background. This would constitute clear identification except for the fact that when the documents are separated from each other this label is left behind. Hence, the copy given to the customer does not have this identification on it.

However, Ford Motor Credit Company is referred to in the contract. On its face in unemphasized type there is the following clause: "The foregoing contract hereby is accepted by the seller and assigned to Ford Motor Credit Company in accordance with the terms of the assignment set forth on the reverse side hereof." On the reverse of the contract is a large assignment clause constituting about 40 percent of the writing on the page in which Ford Motor Credit Company is repeatedly referred to as the assignee or transferee of the seller.

Obviously, Ford Motor Credit Company is identified in the contract. It is not so patent that it is clearly identified. Several cases are noted on both sides of the issue. Supporting the position that Ford Motor Credit Company is not clearly identified are *Rogers v. Frank Jackson Lincoln-Mercury*, 458 F.Supp. 1387 (N.D.Ga.1978); *Cenance v. Bohn Ford*, 430 F.Supp. 1064 (E.D.La.1977); *Milhollin v. Ford Motor Credit Company*, C.A. 75334 (D.Or.1976), *aff'd on other grounds* 588 F.2d 753 (9th Cir. 1978); and *Lauletta v. Valley Buick*, 421 F.Supp. 1036 (W.D.Pa.1976) (by analogy). But supporting clear identification are the following: *Milhollin v. Ford Motor Credit Co.*, 588 F.2d 753 (9th Cir. 1978); *Sharp v. Ford Motor Credit Company*, 452 F.Supp. 465 (S.D.Ill. 1978); *Augusta v. Marshall Motor Company*, 453 F.Supp. 912 (N.D.Ohio 1977); *Main v. Fuller Ford*, C.A. 74–337 (W.D.Pa.1976); and *Grey v. European Health Spas*, 428 F.Supp. 841 (D.Conn.1976) (by extension).

This Court considers the better reasoning to be found in the cases holding that Ford Motor Credit Company is clearly identified.

The distinguishing rationale can be found in *Grey v. European Health Spas, supra.* The requirement that a creditor be *identified* is not to be equated with a requirement that a creditor be *disclosed.* In *Grey* the Court is dealing with the identification requirement of § 226.8(a), but the analogy to § 226.8(d) seems proper. Section 226.8(a) requires that the "creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified." Hence, the regulations consider the identification of the creditor as something other than a required disclosure. If the identity of the creditor were to constitute a disclosure, then under § 226.6(a) "annual percentage rate" and "finance charge" would be required to be more conspicuous than any identification of the creditor. Finance companies would have to be careful that the name of the company at the top of the page does not exceed the level of emphasis of these two terms further down on the page. Also, when federal disclosures must be separated from state law disclosures under § 226.6(c), the name of the creditor must appear below the caption stating that the disclosures are made in compliance with federal law. Clearly, such anomalous results go beyond the intention of the drafters of the regulations.

■ Since the identification of the creditors does not constitute a disclosure, § 226.-6(a) does not require the identification to be *conspicuous.* An identification can be clear, *i. e.* unambiguous and not obscure, and yet not be conspicuous. *Cf.* Official Staff Interpretation of Regulation Z, 41 Fed.Reg. 41908 (1976).

■ The identification of the defendant on the face of the contract is hardly conspicuous, but then neither is it ambiguous or obscure. It appears only an inch from the place for the buyer's signature, and it clearly identifies the defendant as the assignee of the contract. Identification of the defendant as the assignee is accurate and adequately informs the purchaser of the nature of his relationship with the Ford Motor Credit Company. The regulations do not require that the defendant be identified as a "creditor"; merely that it be *identified.* *Milhollin v. Ford Motor Credit Co., supra* (9th Cir. 1978). *Compare Whitlock v. Midwest Acceptance Corp.,* 575 F.2d 652 (8th Cir. 1978), *reversing* 449 F.Supp. 631 (E.D. Mo.1978).

## IV. *Third Contention*

■ A violation of the Truth in Lending Act did occur relating to the disclosure of the cash price. The disclosure statement included in the consumer sales contract states that the cash price is $3,750.56. But it is not disclosed that the cash price includes a $9.75 "documents preparation" charge, and $4.05 for "license, transfer, title, registration." This breakdown is apparent from another disclosure statement given by the seller on the purchase order. The disclosure statement included in the credit contract does have a space captioned "License, Title, and Registration Fees." This space is left blank.

The failure to disclose these two items on the disclosure statement on which the defendant relies is clearly a violation of the Truth in Lending Act under the authority of *Meyers v. Clearview Dodge Sales,* 539 F.2d 511 (5th Cir. 1976). *Meyers* involves a failure to disclose a $25.00 "documentary service fee," and a $15.00 charge for "tag, title and fees." The reasoning of the Court in *Meyers* need not be rehashed here to demonstrate the existence of a violation.

■ Defendant seeks to shield itself from liability by the provision of Regulation Z, 12 C.F.R. § 226.6(d):

*Multiple creditors or lessors; joint disclosure.* If there is more than one creditor . . . in a transaction, each creditor . . . shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer. . . . If two or more creditors . . . make a joint disclosure, each creditor . . . shall be clearly identified. The disclosures required un-

der paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8, or paragraph (b) of § 226.15.

The regulation is an apparent attempt to divide the responsibility to make disclosures among the creditors. However, the result of this effort is far from clear. Several cases have considered this question and fall into three categories. The first category includes the numerous cases which have imposed liability on multiple creditors without a consideration of this regulation. This includes *Meyers, supra*. The second category is a minority view represented by *Manning v. Princeton Consumer Discount Company*, 533 F.2d 102 (3d Cir. 1976), *affirming* 397 F.Supp. 504 (E.D.Pa.1975), *on reconsideration of* 390 F.Supp. 320 (E.D.Pa.1975), *cert. denied* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144, *rehearing denied* 429 U.S. 933, 97 S.Ct. 342, 50 L.Ed.2d 303; *Boggan v. Euclid National Bank, CCH Consumer Credit Guide* ¶ 98674 (N.D.Ohio 1974). The third category is the majority view represented by the following cases: *Hinkle v. Rock Springs National Bank*, 538 F.2d 295 (10th Cir. 1976); *Price v. Franklin Investment Company*, 187 U.S.App.D.C. 383, 574 F.2d 594 (1978); *Smith v. Lewis Ford, Inc.*, 456 F.Supp. 1138 (W.D.Tenn.1978); *Lipscomb v. Chrysler Credit*, No. C–792 (N.D. Ohio 1973); *Williams v. Bill Watson Ford*, 423 F.Supp. 345 (E.D.La.1976).

The courts deciding the cases listed in the last two categories refused to follow the first decisions on the basis that the failure to consider the regulatory language on point prevented the cases from having any real authority. The district court in *Williams* did not consider the *Meyers* decision of the Fifth Circuit as binding precedent:

> While we recognize the substantial similarities between the instant case and *Meyers*, we find that the *Meyers* case is not controlling of the allocation of liability here because of the provisions of 12 C.F.R. § 226.6(d), a section of Regulation Z, which was not considered by *Meyers* in this context.

This Court does not consider itself bound by *Meyers*, authored by the undersigned, as to an issue which the Fifth Circuit did not consider and which was not presented for that Court's decision.

The leading case interpreting § 226.6(d) is *Manning*. The Third Circuit held:

> In short, we hold that if the transaction is one in which the seller arranges credit, the obligation of disclosure is placed upon him by the third sentence of Regulation § 226.6(d). In that factual situation the specific direction of the third sentence prevails over the general language limiting the scope of disclosure to items within the creditor's knowledge and the purview of his relationship with the customer.
>
> If the seller is divorced from the credit arrangement, then the lender must supply the information which pertains only to the amount of money being received and its cost, without reference to the underlying sales transaction. Because the burden of full disclosure was placed upon the seller, it is our view that if additional and duplicative disclosure had been intended, the regulation would have set that forth with equal explicitness.

533 F.2d at 105–106.

The Court further supported its position by pointing out that it served no purpose to require the lender to disclose items which have already been disclosed by the seller. Under this line of cases, then, the defendant would not be liable for the failure to make the disclosures of the components of the cash price.

However, *Manning* has only been followed by one case. All subsequent decisions expressly reject its reasoning. The reasoning of the majority is summed up in *Price* :

> We concur with the analysis presented in *Hinkle*. We are loathe in the absence of clearly compelling language to adopt a reading that would permit a finance company to escape all liability for nondisclosures by enlisting a seller of goods to arrange for an extension of credit. We are particularly reluctant to do so here

because of the closely integrated relationship of [the seller] and [the lender]. To the extent that the finance company [induces] the conduct of the seller, the deterrent purpose of the liability provisions of the act is advanced by interpreting the first sentence of § 226.6(d) to control liability for failure to make required disclosures. The limitation of "responsib[ili]ty]" in the first sentence to disclosure of matters "within [the creditor's] knowledge and the purview of his relationship with the customer" confines multiple creditors' potential liability to nondisclosures for which they are justifiably held responsible, and is the interpretation most consistent with sections 121(a) and 130(a) and the general purposes of the Act.

574 F.2d at 601–602.

The Court went on to interpret the knowledge and purview test in the first sentence of the regulation:

At a minimum, . . . [finding that the assignee is a creditor] includes the conclusion that the assignee exercised sufficient control over the central terms of the contract to be held liable for their nondisclosure. In addition, the assignee may be charged with the nondisclosure of other matters over which it is shown to have exercised some control.

574 F.2d at 602.

*Williams* applied the same principles to conclude that the amount of a notary's fee and amount of license, title and registration fees were not within the knowledge of the lender or within the purview of the lender's relationship with the customer so that violations regarding these two items could not result in liability of the lender. This holding was expressly approved in *Price* and implicitly approved in *Smith*.

The violations in the instant case are indistinguishable from the violations in *Williams*. Thus, the Court holds that the defendant is not liable for the truth-in-lending violations relied upon by plaintiff. Following the language of the regulation, it cannot be reasonably said that fees included in the cash price such as these are within the purview of the defendant's relationship with the plaintiff. While it is fair to treat the defendant, which is technically an assignee of the contract, as a *creditor*, it would not be fair to treat it as the *seller*.

It should be noted that while the *Hinkle* line of cases seems to be correct, the same result will follow under *Manning* on the instant facts. Likewise, a possible fourth interpretation of § 226.6(d) would not change the result here. *Jennings v. Edwards*, 454 F.Supp. 770 (M.D.N.C.1978).

## CONCLUSION

In that only two violations of the Truth-in-Lending Act occurred, and as to these two the defendant has a valid defense, judgment will be rendered in the defendant's favor. No other violations of the Truth-in-Lending Act have been alleged or proven as to the other individual members of the class. Hence, final judgment will be rendered against the entire plaintiff class. Attorney's fees cannot be awarded to the attorney for the plaintiffs in that the plaintiff class is not the prevailing party. Nor will fees be allowed to the attorney for the defendant in that the plaintiffs' claim is not without substantial merit.