In re James O. SMITH, Debtor.

Ernest V. HARRIS, Trustee, Appellee,

v.

FORD MOTOR CREDIT COMPANY, Appellant.

Civ. A. No. 80–100–ATH.

United States District Court,
M. D. Georgia,
Athens Division.

April 28, 1981.

Ernest V. Harris, Athens, Ga., for appellee.

John S. Noell, Jr., Athens, Ga., for appellant.

OWENS, District Judge:

Ford Motor Credit Company (FMCC) appeals to this court from a finding of the Bankruptcy Court, 7 B.R. 575 (Bkrtcy.), that FMCC was liable to Ernest V. Harris (Trustee) in the amount of $1,000.00 plus costs and reasonable attorney's fees for violation of the Truth in Lending Act, 15 U.S. C.A. § 1601 *et seq.* As appellee accepts without exception the appellant's Statement of the Case was a proper statement of facts, the same are adopted by this court (See *Brief of Defendant Appellant Ford Motor Credit Company*, pp. 1–3).

Appellant lists two issues to be determined by the court: (a) whether the Retail Buyers Order and Invoice shows the cash price of the automobile to be $5,425.63 as found by the Bankruptcy Court or $5,665.16 as alleged by appellant, the latter amount including "Title Notary and Doc Fees" of $22.50 and "Sales Tax" of $217.03, and (b) whether disclosure of the "Title Notary and Doc Fees" and "Sales Tax" on the Retail Buyers Order and Invoice as a portion of the total cash price by the seller, Jefferson Motor Company, Inc., was sufficient disclosure under Regulation Z, 12 C.F.R. 226.6(d) to relieve appellant from liability for a truth-in-lending violation. The first issue amounts at most to an insignificant error on the part of the Bankruptcy Judge and does not warrant consideration here. The second issue, the purpose and effect of 12 C.F.R. § 226.6(d) in the instant case, is the question to be decided on appeal.

Appellant contends that it should not be held liable for a truth-in-lending violation for failure to show on the contract that the total cash price of $5,665.16 included "Title Notary and Doc Fees" in the amount of $22.50 and "Sales Tax" of $217.03. It cites Regulation Z, 12 C.F.R. § 226.6(d) which provides in part that: "If there is more than one creditor . . . in a transaction, each creditor . . . shall be clearly identified and shall be responsible for making only those disclosures . . . which are within his knowledge and the purview of his relationship with the customer. . . ." Appellant claims that the amounts charged for "Title Notary and Doc Fees" and "Sales Tax" were not within its knowledge and the purview of its relationship with the buyer Smith. Appellee, of course, contends that the Bankruptcy Court was correct in its finding that the seller Jefferson Motors was an agent or "conduit" for Ford Motor Credit Company and that FMCC is jointly and severally liable for the violation. Appellee claims that there exists no logical or rational basis by which appellant can escape liability, and that reliance on 12 C.F.R. § 226.6(d) is totally without merit.

The present case is factually very similar to *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511 (5th Cir. 1976). In *Meyers,* a "Retail Buyers Order" was filled out by the salesman and signed by the buyer. It showed $3,295.00 as the price of the car. To this price was added a $25.00 service fee, $199.20 in sales taxes, and $15.00 for "Tag, Title and Fees" resulting in a "Total Cash Delivered Price" of $3,534.20. In the disclosure statement the credit company simply entered this "Cash Delivered Price" as the "Cash Price" of the automobile. The buyer insisted that this practice was in violation of Regulation Z, §§ 226.4(b) and 226.8(c)(4) and the Court of Appeals agreed with this contention. The Court considered the specific disclosure requirements of sections 226.8(c) and 226.4(b) and determined that these sections limited what could be included in the term "Cash Price" to the price of the property, the cost of accessories, delivery, and installation charges and the sales

tax thereon. It found that section 226.-4(b)(4) clearly required the itemization and separate disclosure of the charge for "Tag, Title and Fees" and that failure to individually itemize these charges constituted a violation of the Truth In Lending Act.

The similarity between *Meyers* and the case before the court seems to require that the decision of the Bankruptcy Judge be affirmed. However, as appellant points out, there is one important dissimilarity between the cases—Regulation Z, 12 C.F.R. § 226.6(d) under which appellant seeks to shield itself from liability was not argued or considered by the Court in *Meyers*. Section 226.6(d) states as follows:

> "Multiple creditors or lessors; joint disclosure. If there is more than one creditor ... in a transaction, each creditor ... shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer ... If two or more creditors ... make a joint disclosure, each creditor ... shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8, or paragraphs (b) of § 226.15."

Appellant contends that this regulation is an attempt to divide the responsibility to make disclosures among the creditors. It points out that during the proceedings an employee of appellant testified that appellant had no information about the "Title Notary and Doc Fees." According to the employee it was only after this litigation began that appellant learned of this information when its attorney requested them to obtain a copy of the "Retail Buyers Order and Invoice" and "Car Invoice," since neither of these documents are sent to appellant by the seller in the course of their doing business. (Tape Transcript of Proceedings, October 23, 1980, in record).

Section 226.6(d) has been treated in at least three different ways. *See, Childs v. Ford Motor Credit Co.*, 470 F.Supp. 708 (N.D.Ala.1979). One line of cases, which includes *Meyers, supra*, has imposed liability on multiple creditors without a consideration of this regulation. A second line of cases (the minority view) holds that if the transaction is one in which the seller arranges credit, then the obligation of disclosure is placed upon him by the third sentence of § 226.6(d). *Manning v. Princeton Consumer Discount Company*, 533 .2d 102 (3d Cir. 1976), *affirming* 397 F.Supp. 504 (E.D.Pa.1975), *on reconsideration of* 390 F.Supp. 320 (E.D.Pa.1975), *cert. denied* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144, *rehearing denied* 429 U.S. 933, 97 S.Ct. 342, 50 L.Ed.2d 303. A third view (the majority view) emphasizes the first sentence of § 226.6(d) and finds the limitation of responsibility to disclosure of matters within the creditor's "knowledge and the purview of his relationship with the customer" confines multiple creditors' potential liability to nondisclosures for which they are justifiably held responsible. *Price v. Franklin Investment Co.*, 187 U.S.App.D.C. 383, 574 F.2d 594 (1978).

The Eastern District of Louisiana, in a case similar to the present one, followed the majority view of § 226.6(d) and found no liability on the part of the lender. *Williams v. Bill Watson Ford, Inc.*, 423 F.Supp. 345 (E.D.La.1976). It found liability in multiple creditor cases to be determined by the first sentence of § 226.6(d) which speaks of who "shall be responsible," rather than the third sentence which speaks of who shall *make* the disclosures. In addition, it found the test posed by the first sentence applicable whether each creditor issued its own disclosure statement or whether all creditors issued one joint statement. Before finding one of several creditors liable for a failure to disclose, that test requires a determination that (1) the information withheld was within his knowledge, and (2) the information withheld was within the purview of his relationship with the customer. The *Williams* court found license, title, and registration fees to be items only within the knowledge of the seller. It found that because the fees were collected for every car sold, whether or not it was a credit sale, and because the seller in *Williams* made all the

arrangements concerning these fees and forwarded the money to the correct state agency, they were also within the purview of the seller-consumer relationship.

Finally, appellant cites *Childs v. Ford Motor Credit Co.*, 470 F.Supp. 708 (N.D.Ala. 1979) as supportive of its position that it should be relieved of any Truth In Lending Act violations. As in the present case, the disclosure statement in *Childs* listed a "Cash Price," but it was not disclosed that that price included a $9.75 "Document Preparation" charge, and $4.05 for "License, Transfer, Title, Registration" even though this breakdown was shown on a purchase order given by the seller. The court found that this omission resulted in a truth-in-lending violation; however, the defendant Ford Motor Credit Company could not be held responsible for the violation:

> "The violations in the instant case are indistinguishable from the violations in Williams. Thus, the Court holds that the defendant is not liable for the truth-in-lending violations relied upon by plaintiff. Following the language of the regulation, it cannot be reasonably said that fees included in the cash price such as these are within the purview of the defendant's relationship with the plaintiff. While it is fair to treat the defendant, which is technically an assignee of the contract, as a creditor, it would not be fair to treat it as the seller."

Appellee cites a number of cases in support of its contention that FMCC *is* liable for the truth-in-lending violation in the present case. None of these cases provide any real support to appellee. Some do not even discuss § 226.6(d) in the context in which it occurs in the present case. Others adopt the majority view on 226.6(d) and hold the lender liable, but they are factually distinguishable from this case. One case, while adopting the majority view, held that things like title, tag, and registration fees are not within the knowledge or purview of the lender's relationship with the consumer. Accordingly, this court does not find these cases persuasive on the issue before it.

Based on the above discussion, the court concludes that appellant, while a "creditor"

within the meaning of 12 C.F.R. § 226.2(s) (1976), is shielded from any liability for the seller's failure to disclose "Title Notary and Doc Fees" and "Sales Tax" by 12 C.F.R. § 226.6(d). *Meyers* specifically states that the "Cash Price" may include the sales tax; and items such as title and notary or registration fees "independent of the nature of the transaction, whether cash or credit" (*Cenance v. Bohn Ford, Inc.*, 621 F.2d 130 (5th Cir., 1980)) and clearly within the "knowledge" of the seller and within the "purview of the seller-consumer relationship" (*Williams v. Bill Watson Ford, Inc., supra*, at 357). The items included in the "Cash Price" on the installment contract, which was assigned to appellant, had already been disclosed by the seller on its car invoice and were not items within the purview of appellant's relationship with Mr. Smith, purchaser of the automobile.

Accordingly, the order of the Bankruptcy Court in favor of plaintiff-appellee is hereby REVERSED and the case is remanded for entry of an appropriate order.